OPINION
{¶ 1} Appellant, Michael W. Nichols, Jr., appeals from a judgment of the Lake County Court of Common Pleas, convicting him on one count of felonious assault and sentencing him to a five-year prison term. For the reasons set forth below, we affirm in part with respect to the conviction and the application of the R.C. 2929.12 factors, but vacate the sentence and remand for resentencing.
 {¶ 2} On April 21, 2004, the Lake Count Grand Jury indicted appellant on one count of felonious assault, a second degree felony in violation of R.C. 2903.11(A)(1). Appellant waived the right to be present at his arraignment, and the trial court entered a not guilty plea on his behalf.
 {¶ 3} This matter proceeded to a jury trial and the following facts were disclosed. On February 12, 2004, appellant was at a bar called Madtown Lounge, located in Lake County, Ohio. The following individuals were with appellant at the bar: (1) his friends, James Armstrong ("Armstrong") and Dino Pappalardo ("Pappalardo"); (2) his girlfriend, Christie Petrinski ("Petrinski"); and (3) his mother, Wanda Mighell ("Mighell"). At approximately 12:30 a.m., Petrinski became involved in a physical altercation with another bar patron. This fight escalated and created multiple physical confrontations throughout the bar. During the melee, appellant physically assaulted the victim, Pete Mussell, inside the bar and outside in the parking lot.
 {¶ 4} As a result of appellant's assault, the victim incurred severe injuries to his head and hand, and was life flighted to a local hospital for medical attention. The injuries to the victim's head included cuts and multiple fractures of facial bones. The victim's hand required surgery to re-attach muscle tendons.
 {¶ 5} The state presented eyewitness testimony describing appellant's assault of the victim. Todd Brothers ("Brothers"), a bouncer at Madtown Lounge, testified that he witnessed the assault. He stated that while he was attending to Petrinski's altercation, he witnessed appellant fighting with an unknown individual. Brothers separated appellant from the unknown individual. Appellant then physically assaulted Brothers. Brothers disengaged from appellant and briefly stepped out of the bar.
 {¶ 6} When he returned, Brothers saw appellant kneeling above the victim as the victim was lying on his back. Appellant was repeatedly punching the victim's face. Brothers testified that the victim was completely defenseless and did not attempt to strike appellant. He stated that appellant was highly intoxicated and extremely aggressive. The victim's friend, Dan DeFranco ("DeFranco"), attempted to separate appellant from the victim, but was unable to do so. Brothers testified that once appellant was separated from the victim, the victim staggered outside to the parking lot.
 {¶ 7} DeFranco corroborated Brother's testimony with respect to appellant's assault inside the bar and provided additional testimony relating to the assault in the parking lot. Specifically, while inside the bar, DeFranco returned from using the restroom and saw appellant kneeling on the floor above the victim, repeatedly punching him in the face. DeFranco testified that the victim was completely defenseless as appellant ruthlessly beat him.
 {¶ 8} When DeFranco attempted to separate appellant from the victim, Armstrong physically attacked him. Armstrong's attack prevented DeFranco from separating appellant from the victim. Eventually, DeFranco escaped Armstrong's attack and proceeded outside to the parking lot.
 {¶ 9} Once outside, DeFranco saw appellant and Armstrong beating the victim, while the victim was lying on his back between two vehicles. The victim was fading in and out of consciousness as appellant was on top of him, repeatedly punching him in the face, and Armstrong was kicking the victim in the ribs. Again, DeFranco attempted to help the victim, but Armstrong once more attacked DeFranco, thereby preventing the rescue attempt.
 {¶ 10} DeFranco pulled appellant away from the victim. At this time, Petrinski and Mighell attacked DeFranco. Finally, DeFranco assisted the victim to his truck and drove the victim to a hospital.
 {¶ 11} Petrinski was called as a state's witness. She testified that she did not see appellant assaulting the victim. However, her testimony contradicted her written statement to the police following the assaults, in which she specifically stated that she saw appellant beating the victim between two vehicles in the parking lot.
 {¶ 12} Peggy Bowden ("Bowden"), a patron of the bar, corroborated the testimony of Brothers and DeFranco, as she witnessed the assaults. Importantly, she testified that despite the victim's inability to defend himself, appellant continued the brutal assaults.
 {¶ 13} The state produced DNA testing of blood samples taken from appellant's clothing. Expert witness testimony at trial established that there was a substantial amount of blood on appellant's clothing and that the blood belonged to the victim.
 {¶ 14} At the close of the state's case, appellant moved for acquittal pursuant to Crim.R. 29. The trial court denied appellant's motion for acquittal.
 {¶ 15} Appellant presented the testimony of Pappalardo. Pappalardo testified that the victim incited the assault inside the bar by throwing a bottle at appellant. He did not provide any additional testimony regarding the assault which occurred outside.
 {¶ 16} At the close of all evidence, appellant renewed his motion for acquittal. The trial court denied appellant's acquittal request.
 {¶ 17} The trial court provided jury instructions for the charge of felonious assault. Appellant objected to the jury instructions regarding causation, complicity, and foreseeable consequences. These objections were overruled by the trial court.
 {¶ 18} The jury returned a unanimous verdict of guilty on the charge of felonious assault. Accordingly, the court entered judgment convicting appellant of felonious assault. Thereafter, a presentence report was submitted to the trial court, and the court held a sentencing hearing. At the conclusion of the sentencing hearing, and within its judgment entry, the court sentenced appellant to a five-year prison term.
 {¶ 19} From this judgment, appellant filed a timely notice of appeal and sets forth the following seven assignments of error for our review:
 {¶ 20} "[1.] The trial court committed reversible error when it gave a complicity instruction over the objections of the defendant-appellant in violation of the defendant-appellant's rights to due process and fair trial as guaranteed by the Fifth
and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.
 {¶ 21} "[2.] The causation and natural consequences jury instructions given by the trial court undercut the mens rea requirement for the charges and thus violated the defendant-appellant's right to due process and fair trial as guaranteed by the Fifth and Fourteen Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.
 {¶ 22} "[3.] The trial court erred to the prejudice of the defendant-appellant when it denied his motion for acquittal made pursuant to Crim.R. 29(A).
 {¶ 23} "[4.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence.
 {¶ 24} "[5.] The trial court erred to the prejudice of the defendant-appellant when it ordered him to pay $38,145 in restitution for the victim's medical bills.
 {¶ 25} "[6.] The trial court erred in sentencing the defendant-appellant to five years in prison when it sentenced him contrary to R.C. 2929.12 based upon findings not supported by the record.
 {¶ 26} "[7.] The trial court erred when it sentenced the defendant-appellant to a more-than-the-minimum prison sentence based upon a finding of factors not found by the jury or admitted by the defendant-appellant in violation of defendant-appellant's state and federal constitutional rights to trial by jury."
 {¶ 27} Before addressing appellant's assignments of error, we must first dispose of his Motion to File Supplemental Assignment of Error. On February 28, 2006, two days before oral argument scheduled in this appeal, appellant filed the motion. The supplemental assignment of error asserted that the trial court committed plain error when it gave an incorrect instruction of aggravated assault, as a lesser offense, instead of an offense of an inferior degree. After filing his initial brief and assignments of error, appellant has no right to raise additional assignments of error unless leave is granted by the court pursuant to App.R. 14(B). This motion was untimely filed as appellee had no time to reply prior to oral argument. Further, appellant never objected on these grounds at trial, nor did he request other jury instructions. His failure to object "constitutes a waiver * * *, unless, but for the error, the outcome of the trial clearly would have been otherwise." Statev. Underwood (1983), 3 Ohio St.3d 12, at paragraph three of the syllabus. Based upon the forgoing, appellant's motion is overruled.
 {¶ 28} Because appellant's first and second assignments of error challenge the trial court's jury instructions, we will address these assignments of error in a consolidated fashion. For purposes of appellate review, "[t]he decision to issue a particular jury instruction rests within the sound discretion of the trial court." State v. Huckabee (Mar. 9, 2001), 11th Dist. No. 99-G-2252, 2001 Ohio App. LEXIS, at 18. Absent an abuse of discretion this court will not reverse the trial court's decision to provide the jury with a specific instruction. Id. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980),62 Ohio St.2d 151, 157.
 {¶ 29} First, appellant argues that the trial court erred by giving a jury instruction regarding complicity to felonious assault. He maintains that the evidence did not support the trial court's decision to provide a complicity instruction. Specifically, appellant contends that the evidence failed to show that he acted in concert with another individual during the assault.
 {¶ 30} A court's jury instructions should contain plain, unambiguous statements of the law, which are applicable to the case and evidence presented to the jury. State v. Sims, 11th Dist. No. 2001-L-081, 2003-Ohio-324, at ¶ 60. "`The jury instructions provided by the trial court must be confined to the issues raised by the pleadings and the evidence.'" Id., quotingState v. Kirin (Aug. 11, 2000), 11th Dist. No. 99-T-0054, 2000 Ohio App. LEXIS 3661. Accordingly, the trial court may not instruct a jury where there is no evidence to support the issue addressed by the instruction. Sims at ¶ 60; Kirin.
 {¶ 31} R.C. 2923.03(F) provides that an accomplice to the commission of an offense shall be prosecuted and punished as if he were a principal offender. State v. Read (Dec. 10, 1999), 11th Dist. No. 98-L-127, 1999 Ohio App. LEXIS 5932, at 6. The plain language of R.C. 2923.03(F) states that a charge of complicity may be stated in terms of the complicity statute, R.C.2923.03, or in terms of the principal offense. Id. Thus, pursuant to R.C. 2923.03(F), although the defendant was only indicted and prosecuted as the principal offender, a jury instruction as to complicity could be given. Id., citing State v. Tumbleson
(1995), 105 Ohio App.3d 693, 696.
 {¶ 32} The jury instruction echoed the language of R.C.2923.03(A) in providing the elements of complicity, to wit:
 {¶ 33} "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 {¶ 34} "(1) Solicit or procure another to commit the offense;
 {¶ 35} "(2) Aid or abet another in committing the offense;
 {¶ 36} "(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code.
 {¶ 37} "(4) Cause an innocent or irresponsible person to commit the offense."
 {¶ 38} As will be shown the evidence presented at trial established that appellant procured Armstrong's assistance in committing the assault and that appellant aided or abetted Armstrong's assault. It is important to note that, per R.C.2923.03(A), a defendant can engage in complicity while acting as the principal offender. Read at 7. See, also, Sims.
 {¶ 39} The evidence demonstrated that throughout both assaults appellant and Armstrong acted in complicity. During the assault inside the bar, Armstrong assisted appellant by precluding DeFranco from separating appellant from the victim. Armstrong did so by physically attacking DeFranco. Likewise, during the parking lot assault, Armstrong again physically attacked DeFranco when DeFranco attempted to rescue the victim. Petrinski and Mighell also began to attack DeFranco when he tried to separate appellant and the victim. Moreover, in the parking lot, appellant aided the assault outside as he was on top of the victim, while Armstrong repeatedly kicked the victim in the ribs.
 {¶ 40} There was ample evidence presented at trial which established that appellant acted as the principal offender and engaged in complicity during the assaults. Thus, the trial court did not abuse its discretion by providing the jury with an instruction relating to complicity. This portion of appellant's first and second assignments of error is without merit.
 {¶ 41} Next, appellant argues that the trial court erred by giving jury instructions regarding causation and natural consequences. He contends that these instructions effectively reduced the state's burden of proof from the higher mens rea of knowingly to the lower mens rea of negligence.
 {¶ 42} At the outset, appellant concedes that this court has recently rejected this identical argument in State v. Crain,
11th Dist. No. 2001-L-147, 2003-Ohio-1204, but raises this argument to preserve the issue for future consideration.
 {¶ 43} In this case and Crain, the trial court recited a jury instruction on causation and natural consequences as provided under 4 OJI 409.55. Id. at ¶ 40. The defendant inCrain argued that "the giving of this instruction impermissibly changed the mens rea requirement of * * * knowingly for felonious assault to a civil negligence standard." Id. at ¶ 16. We rejected this argument. Id. at ¶ 40. Specifically, we held that this jury instruction did not lower the mens rea requirement based upon the following: (1) the trial court gave the instruction in connection with a charge of felonious assault; (2) the instruction did not contain references to presumptions, intent, or a reasonably prudent person; and (3) the instruction did not constitute prejudicial error with respect to the jury instructions as a whole.
 {¶ 44} Based upon the precedent established by Crain,
appellant's argument fails, but is preserved for further consideration. This portion of appellant's first and second assignments of error is not well-taken.
 {¶ 45} Finally, appellant argues that a segment of the jury instructions were prejudicial, as the segment made findings of fact which were only to be made by the jury. In support of this contention, appellant cites to the following jury instruction segment:
 {¶ 46} "The defendant is responsible for the natural consequences of the defendant's unlawful act or failure to act,even though physical harm to Peter J. Mussell was also caused bythe intervening act or failure to act of another person." (Emphasis added.)
 {¶ 47} Appellant claims that the statement — "even though physical harm to Peter J. Mussell was also caused by the intervening act or failure to act of another person" — informed the jury that the victim had been physically harmed by another person.
 {¶ 48} The Ohio Supreme Court has observed that a court's jury instructions must be considered in context of the instructions as a whole. State v. Price (1979),60 Ohio St.2d 136, 141. In other words, it is improper to consider a segment of the jury instructions in isolation when attempting to determine whether error occurred. Id.
 {¶ 49} In the instant case, the jury instruction used by the trial court was almost a verbatim recitation of OJI 409.56(1). Read in its full context, the jury instruction in no way makes a factual finding. To the contrary, the segment referenced by appellant merely clarified the preceding sentence, to wit: "There may be one or more causes of an event. However, if a defendant's act or failure was one cause, then the existence of other causes is not a defense."
 {¶ 50} Simply put, the complete jury instruction merely informs the jury that despite the existence of multiple causes for appellant's injuries, appellant is responsible for the natural consequences of his actions and the multiple causes are not a defense. Thus, the court's jury instruction did not make an impermissible factual finding. This portion of appellant's first and second assignments of error is not well-taken.
 {¶ 51} Appellant's first and second assignments of error are without merit.
 {¶ 52} Under his third assignment of error, appellant contends that the trial court erred in denying his Crim.R. 29(A) motion for acquittal. Appellant maintains that the state failed to present sufficient evidence of a felonious assault and, therefore, the trial court should have granted the acquittal.
 {¶ 53} A trial court shall grant a motion for acquittal when there is insufficient evidence to sustain a conviction. Crim.R. 29(A). When determining whether there is sufficient evidence presented to sustain a conviction, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 54} In relation to felonious assault, R.C. 2903.11(A)(1) states, "[n]o person shall knowingly * * * [c]ause serious physical harm to another[.]"
 {¶ 55} Appellant claims that the state failed to present sufficient evidence demonstrating that he caused serious physical harm to the victim. To the contrary, the state presented abundant evidence that appellant caused the victim serious physical harm. The testimony of Brothers, DeFranco, and Bowden revealed that appellant repeatedly punched the defenseless victim's face, inside of the bar and in the parking lot. DNA evidence revealed that a substantial amount of the victim's blood was on appellant's clothing. As a result of the assaults, the victim was life-flighted to a hospital for extensive medical attention. The victim incurred multiple facial fractures and required surgery on his hand.
 {¶ 56} The foregoing is sufficient evidence that appellant knowingly caused serious physical harm to another. Appellant's third assignment of error is without merit.
 {¶ 57} Under his fourth assignment of error, appellant argues that his conviction is against the manifest weight of the evidence. We disagree.
 {¶ 58} When reviewing a claim that a judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses, and determines whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. State v. Martin (1983),20 Ohio App.3d 172, 175. See, also, State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52.
 {¶ 59} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. Thompkins
at 390 (Cook, J., concurring). The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. Statev. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 60} When assessing witness credibility, "the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact."State v. Awan (1986), 22 Ohio St.3d 120, 123. "Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." Warren v. Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183, 2000 Ohio App. LEXIS, at 8. Furthermore, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict. Id.
 {¶ 61} Here, the state presented the competent, credible eyewitness testimony of Brothers, DeFranco, and Bowden. The testimony of each eyewitness was virtually identical with respect to appellant's assault of the victim. Importantly, the witnesses testified that the victim was completely defenseless during the assaults and that appellant's repeated punching of the victim's face caused serious physical harm. In addition, the DNA evidence established a substantial amount of the victim's was blood on appellant's clothing.
 {¶ 62} Appellant failed to contradict this eyewitness testimony. The testimony of Petrinski merely recanted her prior police statement that she saw appellant beating the victim. She did not testify that the victim's injuries were not the result of appellant's assault. Also, Pappalardo's testimony only alleged that the victim incited the assaults. His testimony failed to establish that the victim's injuries were the result of someone other than appellant.
 {¶ 63} As a result, there was substantial competent, credible evidence proving that appellant's assaults caused the victim serious physical harm. Appellant's fourth assignment of error is without merit.
 {¶ 64} Under his fifth assignment of error, appellant contends that the trial court erred in ordering him to pay $38,145 in restitution to the victim. In support of this contention, appellant maintains that his presentence investigation report establishes his current and future inability to pay restitution. He points to the following as evidence of his inability to pay the restitution: (1) the absence of a formal education, with the exception of his GED; (2) his long history of drug and alcohol abuse; (3) his inability to obtain stable employment; (4) his extensive criminal record; and (5) his indigency.
 {¶ 65} R.C. 2929.18(A) authorizes the court to order the financial sanction of restitution, to wit:
 {¶ 66} "* * * [t]he court imposing a sentence upon an offender for a felony may sentence the offender to any financial sanction or combination of financial sanctions authorized under this section * * * [.]
 {¶ 67} "(1) Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. * * * If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense."
 {¶ 68} A trial court is not required to conduct a separate hearing to determine the defendant's present and future ability to pay the amount of his or her sanction or fine. State v.Riegsecker, 6th Dist. No. F-03-022, 2004-Ohio-3808, at ¶ 11, citing R.C. 2929.18(E). However, there must be some evidence that the court considered the defendant's present and future ability to pay the sanction. Riegsecker at ¶ 11.
 {¶ 69} Here, the presentence investigation report establishes that, as a result of appellant's felonious assault, the victim incurred $38,145 in medical bills. The report also noted that the victim did not have medical insurance to cover these expenses. After examining the presentence investigation report, the trial court determined that $38,145 in restitution was appropriate based upon appellant's present and future ability to pay.
 {¶ 70} An appellate court may not modify a financial sanction, unless the court "`clearly and convincingly finds'" that `the record does not support the sentencing court's findings, or that the sanction is otherwise contrary to law.State v. Sanders, 11th Dist. No. 2003-L-144, 2004-Ohio-5937, at ¶ 6, citing State v. Kling, 12th Dist. No. CA2003-081-91,2004-Ohio-3911, at ¶ 42. Clear and convincing evidence is that evidence "which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 71} Our review of the presentence investigation report fails to demonstrate clear and convincing evidence that the court's order of restitution was not supported by the record or was contrary to law. Although appellant was not formally educated, he did obtain a GED and was self-employed as a drywall installer. Despite the apparent modest salary appellant earned through his employment, he spent $200 per week on alcohol and marijuana while maintaining general living expenses. His prior criminal record did not preclude him from being self-employed, and there is nothing in the report that shows that he would be precluded from self-employment in the future.
 {¶ 72} The report establishes that appellant was in good physical health. There is nothing in the record which shows that appellant could not be self-employed after serving his sentence or that paying the restitution following his prison term would pose an undue hardship. See, e.g., Sanders at ¶ 11. Also, it is well established that appellant's indigent status for trial does not preclude an order for restitution. Id., citing State v.Kelly (2001), 145 Ohio App.3d 277, 283-284.
 {¶ 73} That being said, appellant's drug and alcohol addictions were considered by the trial court before the order of restitution was issued. Clearly, the court determined that these self-imposed addictions did not preclude appellant from paying restitution in the future. Because there is no clear and convincing evidence that the trial court's order of restitution was not supported by the report or was contrary to law, we cannot conclude that the court erred. Appellant's fifth assignment of error is without merit.
 {¶ 74} In his sixth assignment of error, appellant argues that the trial court erred by sentencing him to a prison term of five years. Appellant maintains that the court's findings under R.C. 2929.12, concerning the seriousness of the offense, the presence of mitigating factors, and the likelihood of recidivism, were not supported by the record.
 {¶ 75} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, at ¶ 37, the Supreme Court of Ohio stated:
 {¶ 76} "* * * R.C. 2929.12, grants the sentencing judge discretion `to determine the most effective way to comply with the purposes and principles of sentencing.' R.C. 2929.12(A) directs that in exercising that discretion, the court shall consider, along with any other `relevant' factors, the seriousness factors set forth in divisions (B) and (C) and the recidivism factors in divisions (D) and (E) of R.C. 2929.12. These statutory sections provide a nonexclusive list for the court to consider."
 {¶ 77} The Supreme Court made it clear, however, that "there is no mandate for judicial factfinding in the general guidance statutes[,]" which do not, therefore, violate Blakely. Cf. Id. at ¶ 42. "The court is merely to `consider' the statutory factors." Id.
 {¶ 78} Appellant maintains that the trial court's determination that he committed a serious offense was based upon an erroneous finding that appellant's assault of the victim was part of organized criminal activity.
 {¶ 79} R.C. 2929.12(B) provides that, "[t]he sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense:
 {¶ 80} "* * *
 {¶ 81} "(2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
 {¶ 82} "* * *
 {¶ 83} "(7) The offender committed the offense for hire or as a part of an organized criminal activity[.]"
 {¶ 84} In the instant case, the trial court determined that appellant's assault was more serious than conduct normally constituting the offense, in part due to appellant committing the offense as part of organized criminal activity.
 {¶ 85} To support a finding of organized criminal activity, the record must demonstrate that appellant and his accompliceplanned to engage in the assault. State v. Bradford, 11th Dist. No. 2001-L-175, 2003-Ohio-3495, at ¶ 28. The mere fact that appellant had an accomplice is insufficient to establish that he engaged in organized criminal activity. State v. Roberson
(2001), 141 Ohio App.3d 626, 633.
 {¶ 86} Here, the record fails to establish clear and convincing evidence that appellant and his accomplices planned the assault. Rather, it is clear that the assault was a spontaneous event that did not include premeditation. Thus, the trial court erred in finding that the assault was part of organized criminal activity, under R.C. 2929.12(B).
 {¶ 87} However, this error, standing alone, is harmless, as the trial court's consideration of the remaining factors of R.C.2929.12(B) supports its determination with respect to the seriousness of the offense. See, e.g., State v. Bradford, 11th Dist. No. 2003-L-168, 2005-Ohio-2070, at ¶ 32 (holding that despite the trial court's repeated erroneous finding that the defendant engaged in organized criminal activity, any resultant error was harmless as additional factors supported the prison term).
 {¶ 88} In this case, the court found that the victim suffered serious physical, psychological, and economic harm as a result of the assault. At the conclusion of the sentencing hearing, the trial court noted the violence and brutality of the assault. The court stated that the victim incurred severe facial injuries, including multiple fractures and severe injuries to his hand, which required surgery. Moreover, the court noted that at one point the victim's injuries were life threatening. The court also noted that the economic harm caused by the assault were severe.
 {¶ 89} In addition, per R.C. 2929.12(D), the court found that appellant had an extensive criminal history and that he has demonstrated a pattern of drug and alcohol abuse which was related to the offense. These findings are supported by clear and convincing evidence and further support the court's sentence, in spite of the erroneous finding that appellant engaged in organized criminal activity.
 {¶ 90} Because the record supports these addition findings, any error on the part of the trial court relating to its finding of organized criminal activity is harmless. This portion of appellant's assignment of error is not well-taken.
 {¶ 91} Next, appellant argues that the trial court erred by finding that none of the mitigating factors under R.C. 2929.12(C) were present. Appellant contends that the trial court ignored testimony that the victim induced the assault.
 {¶ 92} Again, the trial court adequately stated that it had considered the mitigating factors of R.C. 2929.12(C) and found that none applied. R.C. 2929.12(C) provides as follows:
 {¶ 93} "The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is less serious than conduct normally constituting the offense:
 {¶ 94} "(1) The victim induced or facilitated the offense."
 {¶ 95} Although there was some testimony that the victim may have induced the assault, it was within the trial court's wide sentencing discretion to not believe this testimony. See, e.g.,State v. Velotta, 11th Dist. No. 2004-L-166, 2005-Ohio-6707, at ¶ 32, citing Bradford. We note that there was no evidence corroborating the testimony that the victim induced the assault by throwing a bottle at appellant. Furthermore, the evidence clearly established that appellant's assault of the victim in the parking lot was completely unprovoked and unwarranted. Thus, the trial court's finding with respect to the mitigating factors of R.C. 2929.12(C) is not error. This portion of appellant's sixth assignment of error is not well-taken.
 {¶ 96} Finally, appellant argues that the court erred by failing to find he was genuinely remorseful for the assault under R.C. 2929.12(E). Whether appellant "shows genuine remorse" is a factor, per R.C. 2929.12(E)(5), which would indicate a lower likelihood to commit future crimes. The trial court was in the best position to assess appellant's sincerity with respect to any alleged remorse. State v. Schaub, 11th Dist. No. 2003-L-091,2005-Ohio-703, at ¶ 47.
 {¶ 97} Appellant points to his apology to the victim at the sentencing hearing as evidence of his genuine remorse. Because the trial court was in a better position to evaluate the sincerity of appellant's statements, we find that the court was within its broad discretion to determine appellant had failed to show any genuine remorse. This portion of appellant's sixth assignment of error is also not well-taken.
 {¶ 98} Therefore, we conclude that the trial court adequately complied with the requirements of R.C. 2929.12. Appellant's sixth assignment of error is without merit.
 {¶ 99} Under his seventh assignment of error, appellant contends that, per Blakely v. Washington (2004), 542 U.S. 296, the trial court erred by sentencing him to a prison term that was greater than the minimum term allowed by statute. We agree.
 {¶ 100} When sentencing appellant, the trial court relied upon the factors of R.C. 2929.14(B) to impose a prison term of five years. This prison term represented more than the minimum prison term for a second degree felony. Appellant's sentence in this case is impacted by the recent decision of the Foster
Court. In Foster, the Supreme Court held that R.C. 2929.14(B) is unconstitutional for violating the Sixth Amendment because it deprives a defendant of the right to a jury trial, pursuant toApprendi v. New Jersey (2000), 530 U.S. 466, and Blakely v.Washington (2004), 542 U.S. 296. Further, pursuant to UnitedStates v. Booker (2005), 543 U.S. 220, the Supreme Court's remedy was to sever the unconstitutional provisions of the Revised Code, including R.C. 2929.14(B). After severance, judicial factfinding is not required before imposing a more than the minimum sentence. Foster at paragraph two of the syllabus.
 {¶ 101} Since Foster was released while this case was pending on direct review, appellant's sentence is void, must be vacated, and remanded for resentencing. Foster at ¶ 103-104. Upon remand, the trial court is no longer required to make findings or give its reasons for imposing maximum, consecutive or more than the minimum sentences. Id. at paragraph seven of the syllabus.
 {¶ 102} Accordingly, appellant's first, second, third, fourth, fifth, and sixth assignments of error are without merit. Appellant's seventh assignment of error is with merit.
 {¶ 103} The judgment of the Lake County Court of Common Pleas is affirmed in part, with respect to appellant's conviction and the application of the R.C. 2929.12 factors. However, the judgment of the court regarding appellant's sentence is vacated. This case is remanded for resentencing and for proceedings consistent with this opinion pursuant to Foster.
Donald R. Ford, P.J., concurs, William M. O'Neill, J., concurs in judgment only.