[Cite as *State v. Campbell*, 2014-Ohio-4305.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2014-A-0005** |
| MITCHELL A. CAMPBELL, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2012 CR 277.

Judgment: Affirmed.

*Nicholas A. Iarocci,* Ashtabula County Prosecutor, and *Shelley M. Pratt,* Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Gregory A. Price,* 137 South Main, Suite 300, Akron, OH 44308 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1} Appellant, Mitchell A. Campbell, appeals from the December 31, 2013 judgment of the Ashtabula County Court of Common Pleas, sentencing him for illegal assembly or possession of chemicals for the manufacture of drugs. For the reasons that follow, we affirm.

{¶2} On May 11, 2012, the Ashtabula County Grand Jury indicted appellant on three counts: count one, illegal manufacture of methamphetamine, a felony of the

second degree, in violation of R.C. 2925.04(A) and (C)(3)(a); count two, illegal assembly or possession of chemicals for the manufacture of drugs, a felony of the third degree, in violation of R.C. 2925.041(A); and count three, aggravated possession of drugs, a felony of the fifth degree, in violation of R.C. 2925.11(A). Appellant pleaded not guilty at his arraignment.

{¶3} A jury trial commenced on October 16, 2013. Appellee, the state of Ohio, presented three witnesses. Deputy Robert Ginn with the Ashtabula County Sheriff's Department ("ACSD") testified that he was working the midnight shift on April 5, 2012. As he was driving through the parking lot of Walmart, he observed a maroon Ford F150 and saw Benjamin Beckwith, known to be involved in the manufacture of methamphetamine and wanted on several felony warrants, sitting inside. When Deputy Ginn approached the truck, Beckwith fled on foot. Deputy Ginn advised dispatch of the situation. Deputy Ginn chased after Beckwith but was unable to catch him.

{¶4} Deputy Ginn called Sergeant James Truckey, also with the ACSD, for back up assistance. He listed two vehicles in which one might find Beckwith: the maroon Ford F150, seen in the Walmart parking lot, and a black Ford Explorer belonging either to appellant or appellant's live-in girlfriend, Ashlee Riley.

{¶5} Sergeant Truckey testified that while patrolling the area, he observed a black Ford Explorer that matched the description given by Deputy Ginn.[1] While initiating a traffic stop, Sergeant Truckey saw an object thrown from the passenger side window. As Sergeant Truckey approached the vehicle, he observed the driver's side

---

1. Appellant takes issue with the vehicle's model in a footnote in his brief. To clarify, we note that Sergeant Truckey initially testified that he stopped a black Ford Ranger. However, he immediately corrected himself by stating, "I'm sorry, a black Ford Explorer."

window was down. He also smelled a chemical odor emanating from the inside of the vehicle. He associated the smell with methamphetamine production.

{¶6} According to Sergeant Truckey, three people were in the vehicle: appellant, the driver; Ashley Beckwith, the front seat passenger; and Ashley's husband, Benjamin Beckwith, the back seat passenger. Sergeant Truckey had the three individuals exit the vehicle. He placed them in handcuffs for his own safety while waiting for back up to arrive. Sergeant Truckey observed a "chemical cloud" coming from a large camouflage bag located on the back seat.

{¶7} Deputy Ginn arrived at the scene to assist Sergeant Truckey. Deputy Ginn also observed the bag which contained components of a methamphetamine lab. Specifically, the bag contained clear plastic bottles, plastic funnels, cotton balls, coffee filters, a turkey baster, a gas generator, a one pot method methamphetamine lab, mason jars, aluminum foil, drain cleaner, plastic tubing, a lighter, and a digital scale. An insurance card containing appellant's name was also found inside the bag.

{¶8} Detective Bryan Rose with the ACSD was later dispatched to the scene. He testified at trial regarding his certification in assessing, dismantling, and neutralizing methamphetamine labs. In this case, Detective Rose neutralized the chemicals and destroyed the items found inside the bag.

{¶9} At the close of the state's case, defense counsel moved for a Crim.R. 29 judgment of acquittal. The trial court denied the motion on counts one, illegal manufacture of methamphetamine, and two, illegal assembly or possession of chemicals for the manufacture of drugs. However, the court granted the motion on count three, aggravated possession of drugs, and dismissed that count.

{¶10} Riley, appellant's live-in girlfriend, testified for appellant. She stated that appellant had driven her black Ford Explorer.[2] She called the ACSD to inquire how to get the vehicle out of impound. Riley claimed she never saw the camouflage bag before. At some point before the incident, she was unable to find appellant's insurance card. During the time period the card may have gone missing, she indicated that Benjamin Beckwith was at Riley's and appellant's home.

{¶11} Following trial, the jury found appellant not guilty on count one, illegal manufacture of methamphetamine. However, the jury did find appellant guilty on count two, illegal assembly or possession of chemicals for the manufacture of drugs, a felony of the third degree, in violation of R.C. 2925.041(A).

{¶12} On December 31, 2013, the trial court sentenced appellant to 30 months in prison. Appellant timely appealed and asserts the following two assignments of error:

{¶13} "[1.] The accused's conviction for illegal assembly or possession of chemicals for the manufacture of drugs is against the manifest weight of the evidence.

{¶14} "[2.] The trial court erred to Mr. Campbell's prejudice when it improperly instructed the jury on complicity, when Mr. Campbell was never charged with complicity."

{¶15} In his first assignment of error, appellant argues his conviction for illegal assembly or possession of chemicals for the manufacture of drugs is against the manifest weight of the evidence. He alleges that Benjamin Beckwith, the back seat passenger, is the true criminal.

---

2. Deputy Ginn had indicated that appellant drove a black Ford Explorer and that the vehicle was in appellant's name or Riley's.

{¶16} This court stated in *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 Ohio App. LEXIS 5862, *14-15 (Dec. 23, 1994):

{¶17} "'[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.

{¶18} "'In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record, *weighs the evidence* and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)'" (Citations omitted.) * * *" (Emphasis sic.)

{¶19} A judgment of a trial court should be reversed as being against the manifest weight of the evidence "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶20} With respect to the manifest weight of the evidence, we note that the jury is in the best position to assess the credibility of witnesses. *State v. DeHass*, 10 Ohio St.2d 230, paragraph one of the syllabus (1967).

{¶21} In this case, appellant was charged with illegal assembly or possession of chemicals for the manufacture of drugs in violation of R.C. 2925.041(A), which states: "No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to

manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code."

**{¶22}** On appeal, appellant does not contest that the items in question could be used in the production of methamphetamine and that a meth lab was in fact discovered. However, appellant does contest the state's evidence that he possessed the items.

**{¶23}** "Possession of drugs can be either actual or constructive." *State v. Rollins*, 3d Dist. Paulding No. 11-05-08, 2006-Ohio-1879, ¶22, citing *State v. Haynes*, 25 Ohio St.2d 264 (1971). "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). The Ohio Supreme Court has held that "[c]onstructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Wolery*, 46 Ohio St.2d 316, 329 (1976). Drugs that are found in close proximity to a defendant can establish constructive possession. *See State v. Pruitt*, 18 Ohio App.3d 50, 58 (8th Dist.1984). Circumstantial evidence alone is sufficient to support the element of constructive possession. *See, e.g., State v. Jenks,* 61 Ohio St.3d 259, 272-73.

**{¶24}** Here, appellant was driving his or his live-in girlfriend's black Ford Explorer with an active methamphetamine lab in the back seat inside of a duffle bag which also contained appellant's insurance card. As appellant had access to the area where the contraband was found, which was within close proximity to him, he was able to exercise dominion and control over the items, thereby showing constructive

6

possession. The jury chose to believe the state's witnesses who established the foregoing. *DeHass, supra,* at paragraph one of the syllabus. Based on all the evidence presented, as previously stated, we cannot say that the jury clearly lost its way in finding appellant guilty of illegal assembly or possession of chemicals for the manufacture of drugs. *Schlee, supra*, at *14-15; *Thompkins, supra*, at 387.

{¶25} Appellant's first assignment of error is without merit.

{¶26} In his second assignment of error, appellant contends the trial court erred in improperly instructing the jury on complicity because he was never charged with complicity.

{¶27} "For purposes of appellate review, '(t)he decision to issue a particular jury instruction rests within the sound discretion of the trial court.'" *State v. Nichols*, 11th Dist. Lake No. 2005-L-017, 2006-Ohio-2934, ¶28, quoting *State v. Huckabee*, 11th Dist. Geauga No. 99-G-2252, 2001 Ohio App. LEXIS 1122, *18 (Mar. 9, 2001).

{¶28} "'When reviewing a trial court's jury instructions, an appellate court must examine the entire jury charge. *State v. Porter* (1968), 14 Ohio St.2d 10, 13 * * *. (* * *) One sentence or one phrase should not be looked at in isolation. Id. (* * *) Further, generally, jury instructions are viewed in their entirety to determine if they contain prejudicial error. *State v. Fields* (1984), 13 Ohio App.3d 433, 436 * * *. (* * *)' (Parallel citations omitted.) Thus, even if a jury instruction was inappropriate, if it did not materially affect the outcome of the case, a reversal of the judgment is not justified. *Id.* at 15." *State v. Shaffer*, 11th Dist. Trumbull No. 2001-T-0036, 2003-Ohio-6701, ¶52, quoting *State v. Norwood*, 11th Dist. Lake No. 2000-L-146, 2002 Ohio App. LEXIS 1325, *12-15 (Mar. 22, 2002). (Parallel citations omitted.)

7

{¶29} In this case, the trial court gave the following instruction regarding complicity and with respect to count two of the indictment:

{¶30} "The defendant has been charged with Illegal Manufacture of Methamphetamine and Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs. You may also consider if the defendant was complicit in aiding and abetting another in the commission of these offenses.

{¶31} "Aided or abetted means supported, assisted, encouraged, cooperated with, advised or incited another to commit the offense.

{¶32} "It is no defense to a charge of complicity that no person with whom the defendant was in complicity has been convicted as a principal offender.

{¶33} "* * *

{¶34} "Under Count Two of the Indictment, the defendant is charged with Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs, in violation of Ohio Revised Code Section 2925.041(A), a felony of the third degree.

{¶35} "Before you can find the defendant guilty, you must find beyond a reasonable doubt that on or about the 5th day of April, 2012, and in Ashtabula County, Ohio: A.) The defendant knowingly aided or abetted; B.) the possession or assembly of; C.) one or more chemicals; D.) that may be used to manufacture a controlled substance; E.) with the intent to manufacture a controlled substance, to wit: Methamphetamine."

{¶36} The court proceeded to define the applicable terms. The record does not reflect that appellant ever objected to the jury instruction at issue. "The failure to object to the giving or failure to give an instruction before the jury retires constitutes a waiver

8

absent plain error." *State v. Hake*, 11th Dist. Trumbull No. 2007-T-0091, 2008-Ohio-1332, ¶42, citing *Shaffer, supra,* at ¶45; Crim.R. 30(A). "An alleged error constitutes plain error only if the error is obvious and, but for the error, the outcome of the trial clearly would have been different." *State v. Boles*, 11th Dist. Ashtabula No. 2013-A-0026, 2014-Ohio-744, ¶30, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶108.

**{¶37}** In addressing a similar issue regarding a complicity instruction, this court stated in *Nichols, supra,* at ¶31:

**{¶38}** "R.C. 2923.03(F) provides that an accomplice to the commission of an offense shall be prosecuted and punished as if he were a principal offender. *State v. Read* (Dec. 10, 1999), 11th Dist. No. 98-L-127, 1999 Ohio App. LEXIS 5932, at *6. The plain language of R.C. 2923.03(F) states that a charge of complicity may be stated in terms of the complicity statute, R.C. 2923.03, or in terms of the principal offense. Id. Thus, pursuant to R.C. 2923.03(F), although the defendant was only indicted and prosecuted as the principal offender, a jury instruction as to complicity could be given. Id., citing *State v. Tumbleson* (1995), 105 Ohio App.3d 693, 696 * * *." (Parallel citation omitted.) *See also In re A.T.*, 11th Dist. Lake No. 2010-L-114, 2011-Ohio-5104, ¶48, citing *Nichols, supra* (holding that "Ohio courts agree that defendants are put on notice of the possibility of criminal liability based on complicity simply by virtue of the language in R.C. 2923.03(F)" and that "[i]ntroduction of complicity for the first time [even] at closing arguments is generally acceptable because the defendant is considered to be on notice via R.C. 2923.03(F).")

{¶39} In the instant matter, making mention of complicity during the court's jury instructions was not erroneous as appellant was on notice under R.C. 2923.03(F). *See In re A.T., supra,* at ¶49. In addition, although appellant was not charged with complicity, the evidence presented at the jury trial was sufficient to warrant a complicity instruction. *Nichols, supra,* at ¶31. As stated, the evidence established that appellant acted as the principal offender as well as in complicity with another. Appellant cannot show that the outcome of the trial would have been different had the complicity instruction not been given. *Boles, supra,* at ¶30; *Yarbrough, supra,* at ¶108. Thus, appellant suffered no prejudice.

{¶40} Appellant's second assignment of error is without merit.

{¶41} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Ashtabula County Court of Common Pleas is affirmed.

TIMOTHY P. CANNON, P.J.,

THOMAS R. WRIGHT, J.,

concur.