DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Adolph Bailey, appeals from his conviction in the Lorain County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On January 19, 2005, Appellant was an inmate at the Grafton Correctional Camp ("Grafton Camp") at Grafton Correctional Institution in Lorain County, Ohio. Grafton Camp is used to house inmates with a lower security clearance and is located on separate grounds from the main institution. At Grafton Camp, the inmates are allowed more freedom than those housed in the main institution and the inmates are generally permitted to come and go as they please with respect to the restrooms and living areas. On average, there are between 150 to 180 inmates housed at this location.
 {¶ 3} Upon entering Grafton Camp, each inmate receives a handbook explaining all the camp rules, including rules related to regularly conducted inmate counting procedures. At 4:00 p.m. each day, the corrections officers at Grafton Camp conduct a standing count.[1] During this time, each inmate must stand beside, or at the foot of, his bed. While one officer watches the aisles in the dormitory, two other officers walk down the rows and physically count each inmate. During a count, inmates are permitted to use the restrooms on an emergency basis only. They are not permitted to visit the restrooms for hygiene purposes. From start to finish, the counting procedure lasts approximately 45 minutes.
 {¶ 4} On January 19, 2005, Appellant was an inmate at Grafton Camp. During the count, Appellant approached the restrooms with hygiene items, including a toothbrush and toothpaste, and possibly a comb. He was informed by corrections officers that the restroom was not available for hygiene purposes during the count. Appellant continued to attempt to use the restroom in violation of a direct order to return the hygiene items to his bed area. Appellant then turned away from the corrections officers and stated that he was going downstairs.[2] He was again informed that this was not permitted during the count. Appellant proceeded to go down the stairs. Appellant was followed by two corrections officers, both of whom used verbal commands to stop Appellant. When it was clear to corrections officers that the verbal commands were not working, they resorted to physical restraints. During the ensuing scuffle with Corrections Officer's James Dent and Daniel Leonard, Appellant struck Corrections Officer Dent ("C.O. Dent") in the face with a closed fist. C.O Dent suffered a swollen upper lip and sought medical attention. He sustained bruising to his lip and knee as a result of the scuffle. Appellant was finally restrained and ultimately placed into isolation.
 {¶ 5} On March 24, 2005, Appellant was indicted on one count of assault on a corrections officer, in violation of R.C.2903.13(A). Appellant pled not guilty to the charges and on October 13, 2005 waived his right to a jury trial. A bench trial was held on October 27, 2005. At the close of the State's case and at the close of all evidence, Appellant unsuccessfully moved for a Crim.R. 29(A) motion for acquittal. Appellant was convicted on the charge and sentenced to ten months in prison. Appellant filed a timely notice of appeal, raising one assignment of error for our review.
 ASSIGNMENT OF ERROR
"[APPELLANT'S] CONVICTION OF ASSAULT ON A CORRECTIONS OFFICER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 6} In his sole assignment of error, Appellant argues that his conviction was against the manifest weight of the evidence. This Court disagrees.
 {¶ 7} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v.Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citingState v. Thompkins (1997), 78 Ohio St.3d 380, 390 (overruled on other grounds). When a defendant asserts that his convictions are against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340.
 {¶ 8} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id. A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than it supports the other.Thompkins, 78 Ohio St.3d at 387 (reversed on other grounds). Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. at 388. An appellate court must make every reasonable presumption in favor of the judgment and findings of fact of the trial court.Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175; see also, Otten,33 Ohio App.3d at 340.
 {¶ 9} Appellant was convicted of assault on a corrections officer, in violation of R.C. 2903.13(A), which prohibits a person from knowingly causing or attempting to cause physical harm to another. The statute further provides that if the victim of the offense was an employee of a correctional institution, and the offense is committed by a person incarcerated in the institution, the offense becomes a fifth degree felony.
 {¶ 10} Here, Appellant contends that the trial court erred in convicting him of the charged offenses because the State did not show that Appellant knowingly caused physical harm to the corrections officer. More specifically, Appellant argues that the testimony offered by the State demonstrated that Appellant was resisting the physical constraints of the corrections officers at the time C.O Dent was struck and that there was no evidence of Appellant knowingly causing or attempting to cause physical harm to C.O. Dent. Appellant contends that the trial court created a miscarriage of justice in view of the evidence that he was resisting arrest.
 {¶ 11} To find Appellant guilty, the trial court had to find that he "knowingly cause[d] or attempt[ed] to cause physical harm to another," R.C. 2903.13(A), i.e., that Appellant "knowingly" punched C.O. Dent in the face. According to the Ohio Revised Code, "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Further, "[a] person has knowledge of circumstances when he is aware that such circumstances probably exist." Id. To determine if the knowledge element exists, "[a] defendant's state of mind may be inferred from the totality of the surrounding circumstances." State v. Harper (Mar. 29, 2000), 9th Dist. No. 19632, at *2. The surrounding facts and circumstances were presented by the State through the testimony of C.O. Leonard, C.O. Dent and Trooper Thomas Lemmon.
 {¶ 12} C.O. Leonard was first to testify. C.O Leonard testified that one of the rules at Grafton Camp is that if an inmate "happens to be given a direct order that he does not agree with, he is still expected to follow that order, and then there's a procedure that he can go about to grieve that situation." He stated that this rule is found in a handbook that all inmates receive upon arrival. Inmates must sign the handbook stating that they read and understood the rules.
 {¶ 13} C.O. Leonard further testified that he took part in the 4:00 p.m. count on January 19, 2005. He testified that he heard an argumentative conflict between C.O. Dent and Appellant regarding using the restroom for hygiene purposes. According to C.O. Leonard, C.O. Dent had given Appellant a direct order to return to his bunk area and that "obviously, it wasn't the first time that he had given him this order, and I approached the situation and I asked what was going on." Appellant then informed C.O. Leonard that C.O. Dent would not allow him to use the restroom. C.O. Leonard again informed Appellant that he was not permitted to take hygiene items to the restroom. C.O. Dent told Appellant once more to return to his bunk area and put the items down and then he would be permitted to use the restroom. C.O. Leonard testified that at this point, Appellant "basically shook his head and said, I have to go to the restroom, and he proceeded to walk in the direction of the doorway to the restroom." The corrections officers gave Appellant a final direct order to return to his bunk area which Appellant ignored. Appellant then made a comment about going downstairs, which, C.O. Leonard testified, was at no time permitted while still under count time frame. C.O. Leonard informed Appellant that this was not allowed, but Appellant continued to walk toward the stairs. C.O. Leonard then chased Appellant down the stairs, all the while telling Appellant he was not permitted to go downstairs. Once downstairs, Appellant attempted to grab a doorknob. As Appellant was grabbing for the doorknob, C.O. Leonard attempted to physically restrain him by wrapping Appellant's left arm with his right arm to get him into the position to handcuff him. Appellant managed to free himself from C.O. Leonard's grasp.
 {¶ 14} C.O. Leonard testified that at this point, C.O. Dent had caught up with them. After some interaction between Appellant and C.O. Dent, the two officers and Appellant ended up falling to the floor. As the three tumbled to the floor, C.O. Leonard lost his grip on Appellant, "[a]nd [Appellant] came down across my back. * * * Next thing I knew, I just felt a choke hold around my neck." C.O. Leonard was able to free himself from Appellant's grasp and assist C.O. Dent and their Sergeant, Sergeant Sklenner, in cuffing Appellant. C.O. Leonard further testified that Appellant "continued to fight the whole time."
 {¶ 15} The State next presented testimony from C.O. Dent. C.O. Dent testified that he was a dorm officer during the 4:00 p.m. count on January 19, 2005. As a dorm officer, C.O. Dent was required to stay upstairs where a majority of all the inmates should be. He was also observing the restrooms. C.O. Dent testified that he observed Appellant "en route towards the restroom, but he had, I believe, toothpaste, toothbrush, a comb and maybe a washcloth in his possession." C.O. Dent told Appellant that he needed to return the items to his bed area if he needed to use the restroom. C.O. Dent testified that Appellant ignored this order and continued to walk. C.O. Dent then got up from his desk, stood in front of Appellant and repeated the order. C.O. Dent testified that Appellant became argumentative and "[h]e just refused pretty much to go back to his bed area." According to C.O. Dent, C.O. Leonard arrived and also ordered Appellant to return to his bed area. Appellant then ran toward the stairs. C.O. Leonard caught up to Appellant first, with C.O. Dent soon after. C.O. Dent testified that Appellant turned from C.O. Leonard and swung at him before all three fell to the floor. C.O. Dent testified that the swing was not merely an attempt to get away from C.O. Leonard, but an attempt to hit him.
"Q. You said that when you came up to him, he swung at you?
"A. Yes.
"Q. And did he strike you?
"A. Yes.
"Q. And where were you struck?
"A. I was struck in my face, upper mouth mainly.
"Q. In your opinion, was he attempting to strike at you or was he attempting to get away from Officer Leonard?
"A. No, I believe he was attempting to strike at me or Officer Leonard. I think he was swinging wildly, but it was an attempt to hit me because his hand was clenched in a fist.
"Q. In a fist? And that's what struck you in the face?
"A. Yes."
 {¶ 16} C.O. Dent testified that his upper lip was swollen as a result of this strike. The State then introduced into evidence a Medical Exam Report for James Dent, describing C.O. Dent's injury. At the conclusion of C.O. Dent's testimony, the State rested its case.
 {¶ 17} As a threshold issue during sentencing, the trial court found that all of the individuals involved in this incident had sufficient injuries to satisfy the physical harm element of R.C. 2903.13(A). Appellant does not challenge this finding.
 {¶ 18} Appellant argues that there was evidence presented that Appellant may have not heard C.O. Leonard's orders to remain upstairs, and therefore did not invite the officer's use of physical force. We disagree. The testimony of C.O. Leonard clearly showed that the inmates are informed of the general rules of Grafton Camp. Appellant was given direct orders by both C.O. Leonard and C.O. Dent, with which he did not comply. If Appellant disagreed with the direct orders, he was required to comply then grieve to a higher officer later. The fact that Appellant continued to go down the steps while C.O. Leonard was chasing after him, yelling at him to stop, is not of consequence because he had already disregarded several earlier direct orders to return to his bunk area. According to C.O. Leonard, once the corrections officers were assured verbal commands were not working, they were authorized to use force to restrain Appellant.
 {¶ 19} Regardless of whether Appellant heard C.O. Leonard tell him he could not go downstairs during the count, running down the stairs resulted in the willing violation of the earlier order to return to his bunk area. There is no dispute that he heard and understood this order. Whether he heard the later direct order or not, "he acted knowingly (i.e., he is presumed to have known the result of his conduct) because he initiated a course of conduct which increased the likelihood of violence and injury." State v. Dixon, 8th Dist. No. 82951, 2004-Ohio-2406, at ¶ 15 (holding that where the appellant walked past police officer and hit him with his shoulder, then turned with fists raised against the officer, the appellant intended the nature and probable consequences of his actions when the subsequent fight resulted in the police officer's broken rib). Appellant initiated such a course of conduct when he refused to follow C.O. Dent's initial direct orders to return to his bunk area. Therefore, Appellant's argument that he may not have heard C.O. Leonard's order to remain upstairs and hence, did not invite the officers' use of physical force, has no merit.
 {¶ 20} The trial court further found that C.O. Dent's testimony regarding the strike was credible. When deliberating on the "knowing" element of R.C. 2903.13(A), the trial court found it notable that Appellant used a closed fist to strike C.O. Dent. Specifically, the trial court stated:
"the fact of the matter is that based upon the evidence that I found to be credible, * * * in my mind the evidence established that Mr. Bailey went beyond just a defensive process with regard to that, but, rather, his turning and striking of Mr. Dent in the face with his fist causing the puffiness of the lip was enough."
 {¶ 21} The trial court found that although no charges arose from Appellant's conduct against C.O. Leonard, C.O. Leonard's testimony bolstered the credibility of the State's argument.
"I think it's notable that the conduct of Mr. Bailey towards Mr. Leonard was purposeful in nature rather than defensive in nature. And, based upon that, I believe it created greater credibility to the argument that the hitting of Mr. Dent was done purposely."
 {¶ 22} We will not disturb the trial court's determinations regarding the witnesses' credibility as "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. The trier of fact is in the best position to judge the credibility of the witnesses and find that Appellant committed the charged offenses.
 {¶ 23} After a review of the evidence, we cannot say that the trial court lost its way and created a miscarriage of justice when it convicted Appellant of assault on a corrections officer. The statue requires that 1) Appellant knowingly caused or attempted to cause physical harm to another and 2) physical harm did occur. See R.C. 2903.13(A). Given the testimony, this is not a case where the evidence weighs heavily in favor of the Appellant, meriting a new trial. Accordingly, Appellant's conviction was not against the manifest weight of the evidence. Therefore, Appellant's sole assignment of error is overruled.
 III. {¶ 24} Appellant's sole assignment of error is overruled, and the judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Slaby, P.J. Carr, J. concur.
[1] There are six standing counts throughout the day. The incident in the present case occurred during the 4:00 p.m. count on January 19, 2005.
[2] On the main level of Grafton Camp there is an office area and a day room for the inmates. This area is restricted during count times.