OPINION
{¶ 1} Appellant, Jason A. Jeffers, appeals the judgment entered by the Lake County Court of Common Pleas. Jeffers was sentenced to five years in prison for his convictions for felonious assault and involuntary manslaughter.
 {¶ 2} On Friday, February 7, 2006, Randall Kemp had a bad day at work. Following work, he went to a local bar and started drinking beer and whiskey. He called his girlfriend, Jacqueline Schmid, and asked her to meet him at the bar. Schmid met Kemp at the bar, and Kemp had several drinks with her. They left the first bar and went *Page 2 
to another bar, where they continued to drink. At 10:00 p.m., Schmid and Kemp arrived at the apartment they lived in together. At that time, Schmid's sons, appellant and David Romeo, were at Schmid and Kemp's apartment watching a movie. In addition, Kailey Grover, a friend of Romeo's, was also at the apartment.
 {¶ 3} Kemp was very intoxicated upon arriving at the apartment. However, at the apartment, he continued drinking beer. During that time, Kemp kept saying he wanted to go to another bar, in order to get into a fight. Concerned for Kemp's safety, Romeo, Jeffers, and Schmid did not want Kemp to leave the apartment and attempted to calm him down. At one point, Kemp accidently hit Jeffers in the mouth, causing Jeffers' mouth to bleed. Jeffers accepted Kemp's apology for the strike.
 {¶ 4} Eventually, Romeo convinced Kemp to go into the bedroom. Romeo gently pushed Kemp onto the bed in an attempt to get him to sleep. Kemp fell onto the bed and immediately bounced back up. He aggressively shoved Romeo, causing him to fall backwards into Schmid. In response, Jeffers punched Kemp in the face. Kemp fell onto the floor, and his head hit the wall hard enough to knock a hole in the drywall. Kemp acted as if he was going to get up, and Jeffers jumped on top of him and punched him in the face or head seven to ten more times. Jeffers described himself as being "flipped out" and in a rage. Romeo and Schmid pulled Jeffers off of Kemp. This entire exchange lasted only a few seconds. Kemp remained on the floor and began to snore.
 {¶ 5} Romeo, Jeffers, and Schmid took turns checking on Kemp every ten to 15 minutes. At one point, Romeo and Jeffers attempted to lift Kemp into bed. However, due to Kemp's size, they were unsuccessful. Later, Schmid checked on Kemp and realized he was not breathing. The group called the authorities, and paramedics and police officers arrived. Kemp died from his injuries. *Page 3 
 {¶ 6} Jeffers was taken to the police station for questioning. He gave a statement to the police consistent with the above version of events. In his statement, Jeffers admitted to hitting Kemp once when Kemp was standing and seven to ten more times when Kemp was on the ground.
 {¶ 7} Jeffers was indicted on one count of felonious assault, in violation of R.C. 2903.11(A) and a second-degree felony, and one count of involuntary manslaughter, in violation of R.C. 2903.04 and a first-degree felony.
 {¶ 8} Jeffers pled not guilty to the charges, and a jury trial was held. Several witnesses testified for the state. In addition, a DVD of Jeffers' statement to the police was admitted as an exhibit and played for the jury. Following the state's case-in-chief, Jeffers moved for acquittal pursuant to Crim.R. 29. The trial court denied Jeffers' motion. Jeffers called Schmid and Grover as part of his defense. In addition, he testified on his own behalf. After the defense rested, Jeffers renewed his Crim.R. 29 motion. The trial court again denied his motion. The jury found Jeffers guilty of both counts of the indictment.
 {¶ 9} Jeffers filed a motion for a new trial and a motion to set aside the verdict and enter a judgment of acquittal. The trial court denied both of these motions.
 {¶ 10} The trial court merged count one into count two for the purposes of sentencing and imposed a five-year prison term on Jeffers for his conviction for involuntary manslaughter.
 {¶ 11} Jeffers raises two assignments of error. We will address these assigned errors out of numerical order. Jeffers' second assignment of error is:
 {¶ 12} "The verdict is not sustained by sufficient evidence, specifically relating to the cause of death, and the culpable mental state of knowingly." *Page 4 
 {¶ 13} A trial court shall grant a motion for acquittal when there is insufficient evidence to sustain a conviction. Crim.R. 29(A). When determining whether there is sufficient evidence presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia
(1979), 443 U.S. 307.
 {¶ 14} Jeffers was charged with felonious assault, in violation of R.C. 2903.11, which provides, in part:
 {¶ 15} "(A) No person shall knowingly do either of the following:
 {¶ 16} "(1) Cause serious physical harm to another * * *."
 {¶ 17} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C.2901.22(B).
 {¶ 18} The evidence established that Kemp was highly intoxicated. In his statement to the police, Jeffers admitted to punching Kemp in the face once when he was standing. The evidence further established that this punch caused Kemp to hit the wall so hard that it knocked a hole in the drywall. Then, Jeffers acknowledged punching Kemp seven to ten more times when Kemp was on the ground. He also acknowledged he was aware of some of Kemp's physical infirmities. This court has held that "[a] punch to the face, resulting in serious injuries to the victim, can support a conviction for felonious assault." State v. Shepherd, 11th Dist. No. 2003-A-0028, 2006-Ohio-4315, at ¶ 28, citing State v. Bennett, 7th Dist. No. 04-MA-184, 2006-Ohio-3566, at ¶ 46, 64, and *Page 5 State v. Gary, 11th Dist. No. 2003-T-0124, 2004-Ohio-6686, at ¶ 3, 10, 24-25. There was evidence that Jeffers punched Kemp in the face a total of eight to 11 times. This evidence was sufficient to sustain Jeffers' conviction for felonious assault.
 {¶ 19} Jeffers argues that there was insufficient evidence that he knew his actions would cause serious physical harm to Kemp. We disagree. "To determine if the knowledge element exists, `(a) defendant's state of mind may be inferred from the totality of the surrounding circumstances.'" (Citations omitted.) State v. Bailey, 9th Dist. No. 05CA008848, 2006-Ohio-5286, at ¶ 11. In this matter, Jeffers punched Kemp with enough force to knock him down. Then, he jumped on Kemp and punched him seven to ten more times in the face or head. This evidence is sufficient to demonstrate Jeffers acted knowingly.
 {¶ 20} Jeffers was also charged with involuntary manslaughter, in violation of R.C. 2903.04(A), which provides:
 {¶ 21} "(A) No person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony."
 {¶ 22} We have concluded that there was sufficient evidence presented to sustain Jeffers' felonious assault conviction. Jeffers argues there was insufficient evidence to link his punches to Kemp's cause of death. The coroner, Dr. Dan Galita, testified that Kemp's cause of death was "blunt impacts to the head, trunk and extremities, with soft tissue and brain injuries." Defense counsel cross-examined Dr. Galita regarding his conclusion, and Dr. Galita acknowledged that Kemp had numerous health problems. By challenging Dr. Galita's medical conclusion regarding Kemp's cause of death, Jeffers was attacking the weight to be given to the evidence. However, Dr. Galita's conclusion regarding the cause of death was properly before the jury. *Page 6 
 {¶ 23} The state presented evidence, including Dr. Galita's medical opinion regarding the cause of Kemp's death, that, when viewed in a light most favorable to the state, was sufficient for a trier of fact to conclude that Kemp's death was caused by the felonious assault of Jeffers, beyond a reasonable doubt.
 {¶ 24} Jeffers' second assignment of error is without merit.
 {¶ 25} Jeffers' first assignment of error is:
 {¶ 26} "Jason Jeffers' jury was inadequately, incorrectly and prejudicially instructed in the following particulars:
 {¶ 27} "(A) By use of an impermissible burden shifting presumption.
 {¶ 28} "(B) The duty to retreat in self-defense cases.
 {¶ 29} "(C) The quantum of force dictated by the evidence.
 {¶ 30} "(D) The physical condition of the victim, having the effect of reducing the state's burden of proof on an element of the charged crime.
 {¶ 31} "(E) Independent, Intervening cause.
 {¶ 32} "All of which singularly, or in combination, affected his substantial rights and denied him a fair trial."
 {¶ 33} This court has previously held that "[r]equested jury instructions should be given if they are (1) correct statements of the applicable law, (2) relevant to the facts of the case, and (3) not included in the general charge to the jury." State v. Mitchell, 11th Dist. No. 2001-L-042, 2003-Ohio-190, at ¶ 10, citing State v.DeRose, 11th Dist. No. 2000-L-076, 2002-Ohio-4357, at ¶ 33, quotingState v. Edwards, 11th Dist. No. 2001-L-005, 2002-Ohio-3359, at ¶ 20. The decision of whether to give a particular jury instruction lies within the trial court's discretion. (Citation omitted.) State v.Nichols, 11th Dist. No. 2005-L-017, 2006-Ohio-2934, at ¶ 28. "The term `abuse of discretion' *Page 7 
connotes more than an error of law or of judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable."State v. Adams (1980), 62 Ohio St.2d 151, 157. (Citations omitted.)
 {¶ 34} Jeffers claims the trial court erred by giving the following instruction:
 {¶ 35} "The state does not have to prove that the Defendant had the specific intention to cause serious physical harm to Randall W. Kemp. The offense of Felonious Assault requires only that the conduct will probably cause such harm. In analyzing knowledge as a mental state, culpability is inferred from the voluntary performance of the act itself, where the risk of a resulting harm is present."
 {¶ 36} Jeffers claims this instruction eliminated the state's burden to demonstrate he acted knowingly. Specifically, Jeffers argues this instruction created a presumptive finding, which is prohibited byCarella v. California (1989), 491 U.S. 263 and Francis v. Franklin
(1985), 471 U.S. 307. Regarding the mental state of "knowingly," this court has held that the state is required to prove that the defendant acted with the culpable mental state "beyond a reasonable doubt without the benefit of conclusive or persuasion-shifting presumptions."State v. Ficzeri, 11th Dist. No. 2004-L-147, 2005-Ohio-6073, at ¶ 19, fn. 4.
 {¶ 37} In Carella, the Supreme Court of the United States held:
 {¶ 38} "We explained in Francis and Sandstrom that courts should ask whether the presumption in question is mandatory, that is, whether the specific instruction, both alone and in the context of the overall charge, could have been understood by reasonable jurors to require them to find the presumed fact if the State proves certain predicate facts."Carella v. California, 491 U.S. at 265, citing Sandstrom v. Montana
(1979), 442 U.S. 510, 514. *Page 8 
 {¶ 39} The United States Supreme Court explained the distinction between a permissive inference and a mandatory presumption inFrancis, where it held:
 {¶ 40} "A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts. * * * A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion." Francis v. Franklin, 471 U.S. at 314.
 {¶ 41} In addition, this court expounded on the distinction between the two terms:
 {¶ 42} "Regarding the issue of whether a specific presumption is mandatory or permissive, the [United States Supreme Court] has stated that the use of `commanding' language in the instruction is a clear indication that the jury will deem itself foreclosed from rejecting the factual inference. For example, the court has concluded that the phrase `shall be presumed' can only be interpreted by a jury to preclude any independent consideration of whether the ultimate fact had been established. [Carella v. California, 491 U.S. at 265.]" State v.Jenkins (Apr. 23, 1999), 11th Dist. No. 97-L-303, 1999 Ohio App. LEXIS 1863, at *13-14.
 {¶ 43} We are extremely troubled with the last sentence of the jury instruction. The last sentence provides, "[i]n analyzing knowledge as a mental state, culpability is inferred from the voluntary performance of the act itself, where the risk of a resulting harm is present." The first problem with this instruction is the phrase "culpabilityis inferred." (Emphasis added.) Had the instruction been given as "culpability may be inferred," this portion of the instruction may have been a correct statement of the law. However, as given, the phrase creates a mandatory presumption rather than permissive inference. The use of "is," in the context of the instruction, does not provide the jury any *Page 9 
deference to reject the inference. Rather, the instruction mandated a finding that Jeffers acted with knowledge if the jury found he acted voluntarily.
 {¶ 44} The second part of the instruction we are concerned with is the next portion of the same sentence, which reads: "where the risk of aresulting harm is present." (Emphasis added.) Had the instruction been given as "where the risk of serious physical harm is present," it would have been a more accurate statement of the law. As given, the instruction permitted the jury to find Jeffers guilty if there was only the risk of "a harm," while the felonious assault statute requires Jeffers be aware that his conduct will probably result in "serious physical harm." R.C. 2903.11(A)(1).
 {¶ 45} The dissent correctly points out that we must observe the entirety of the jury instructions in order to determine whether prejudicial error has occurred. In this case, the incorrect statement goes to the very heart of a key portion of the defense. If the jury misplaced emphasis on this portion of the charge (i.e., a finding only that there was a risk of "a resulting harm"), they could have followed the charge and arrived at an incorrect conclusion. While the evidence certainly supports a conviction of felonious assault, this conclusion might have been reached as a result of the improper instruction. In addition, approval of this portion of the charge would encourage its subsequent use.
 {¶ 46} Taken together, Jeffers was prejudiced by the errors contained in this erroneous instruction. There is no question that Jeffers voluntarily punched Kemp. Further, there is a risk of a resulting harm associated with any punch to another's face. Thus, the instruction, as given, permitted the jury to find Jeffers guilty of felonious assault without finding the requisite statutory factors present. Moreover, this instruction went to the ultimate issue for the jury to decide, i.e., Jeffers' mental state at the time of the incident. A substantial portion of Jeffers' defense was that he did not knowingly *Page 10 
cause serious physical harm to Kemp. He argued that he was not aware that his conduct would probably result in serious physical harm to Kemp.
 {¶ 47} The state notes that, on the record, defense counsel acknowledged this was an accurate statement of the law. However, it is important to recognize that defense counsel repeatedly objected to this instruction and the comment was made in a concessionary fashion in response to the trial court's questions in a lengthy argument regarding whether the instruction should be given.
 {¶ 48} We note the language contained in the challenged instruction is taken directly from the Fourth Appellate District's opinion in State v.Vanover (May 16, 1999), 4th Dist. No. 98CA38, 1999 Ohio App. LEXIS 2357, at *9. The Fourth District used this language in its analysis of the appellant's argument that his conviction was against the manifest weight of the evidence. Id. at *6-15. There is absolutely no indication that the Fourth District intended its analysis to be used as a jury instruction in a subsequent trial. Id.
 {¶ 49} A trial court must act with extreme caution when giving an instruction that is outside the standard Ohio Jury Instructions to ensure that it is a correct statement of the applicable law. This is especially true when the trial court elects to use language from an appellate court opinion, which was not intended to be used as a jury instruction.
 {¶ 50} Because the instruction was not a correct statement of the law and created a mandatory presumption, the trial court abused its discretion by giving this instruction.
 {¶ 51} Jeffers argues that the trial court also erred by only giving a jury instruction on the "deadly force" version of self-defense. See 4 Ohio Jury Instructions (2006), Section 411.31. Instead, Jeffers argues the court should have also instructed on the *Page 11 
"nondeadly force" version of self-defense.[1] See 4 Ohio Jury Instructions (2006), Section 411.33.
 {¶ 52} We note the trial court also gave an instruction on defense of another, in regard to Jeffers' action in defense of Romeo. The elements of this defense are substantially similar to those of self-defense, except that the defendant "stands in the shoes" of the third person. See 4 Ohio Jury Instructions (2006), Section 411.31(6) and 4 Ohio Jury Instructions (2006), Section 411.33(3).
 {¶ 53} Thus, we will conduct this analysis solely referring to self-defense.
 {¶ 54} Self-defense is an affirmative defense, and the burden of proof, a preponderance of the evidence, is the defendant's. State v.Pannetti (Sept. 3, 1998), 8th Dist. No. 73044, 1998 Ohio App. LEXIS 4123, at *6, citing State v. Napier (1995), 105 Ohio App.3d 713, 721. "Pursuant to this defense, one may use such force as the circumstances require in order to defend against danger which one has good reason to apprehend." Id. at *6, citing State v. Fox (1987), 36 Ohio App.3d 78,79; Akron v. Dokes (1986), 31 Ohio App.3d 24, 25; and State v.McLeod (1948), 82 Ohio App. 155, 157. However, the defendant may not use more force than is reasonably necessary to defend against the attack.State v. Vera (Mar. 7, 2002), 8th Dist. No. 79367, 2002 Ohio App. LEXIS 980, at *18. While there may be a broad spectrum regarding the amount of force that may be used in any given circumstance, there are two general classifications contained in the Ohio Jury Instructions, deadly force and nondeadly force. See 4 Ohio Jury Instructions (2006), Section 411.31 and 4 Ohio Jury Instructions (2006), Section 411.33. *Page 12 
 {¶ 55} The Ohio Jury Instruction for self-defense against danger of death or great bodily harm provides, in part:
 {¶ 56} "2. SELF-DEFENSE. The defendant claims to have acted in self-defense. To establish a claim of self-defense, the defendant must prove by the greater weight of the evidence that
 {¶ 57} "(A) he/she was not at fault in creating the situation giving rise to (describe the event in which death or injury occurred); and
 {¶ 58} "(B) he/she had reasonable grounds to believe and an honest belief, even if mistaken, that he/she was in (imminent) (immediate) danger of death or great bodily harm, and that his/her only reasonable means of (retreat) (escape) (withdrawal) from such danger was by the use of deadly force; and
 {¶ 59} "(C) he/she had not violated any duty to (retreat) (escape) (withdraw) to avoid the danger." 4 Ohio Jury Instructions (2006), Section 411.31.
 {¶ 60} Regarding the elements of "deadly force" self-defense, the Supreme Court of Ohio has held:
 {¶ 61} "To establish [deadly force] self-defense, a defendant must prove the following elements: (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger." State v. Barnes (2002),94 Ohio St.3d 21, 24, citing State v. Robbins (1979), 58 Ohio St.2d 74, paragraph two of the syllabus.
 {¶ 62} The Ohio Jury Instruction on nondeadly force self-defense is: *Page 13 
 {¶ 63} "The defendant claims to have acted in self-defense. To establish that he/she was justified in using force not likely to cause death or great bodily harm, the defendant must prove by the greater weight of the evidence that
 {¶ 64} "(A) he/she was not at fault in creating the situation giving rise to (describe the event in which the use of non-deadly forceoccurred); and
 {¶ 65} "(B) he/she had reasonable grounds to believe and an honest belief, even if mistaken, that he/she was in (imminent) (immediate) danger of bodily harm." 4 Ohio Jury Instructions (2006), Section 411.33.
 {¶ 66} Thus, the elements of "non-deadly force" self-defense are:
 {¶ 67} "[T]he non-deadly force instruction requires a defendant to establish (1) that the defendant was not at fault in creating the situation giving rise to the altercation and (2) that he had reasonable grounds to believe and an honest belief, even though mistaken, that he was in imminent danger of bodily harm and his only means to protect himself from such danger was by the use of force not likely to cause death or great bodily harm." State v. Griffin, 2d Dist. No. 20681,2005-Ohio-3698, at ¶ 18, citing 4 Ohio Jury Instructions (2006), Section 411.33 and State v. Hansen, 4th Dist. No. 01CA15, 2002-Ohio-6135, at ¶ 24.
 {¶ 68} Thus, there are two main distinctions between these instructions as they relate to this case. Under the nondeadly force instruction, Jeffers would not have the burden of demonstrating that Kemp presented a risk of great bodily harm and Jeffers' only option was to use deadly force. Second, Jeffers would not have to overcome a duty to retreat. Instead, he would only have to show that he, or Romeo, was in danger of bodily harm and his force was necessary to protect himself or Romeo. *Page 14 
 {¶ 69} The trial court found, and the state argues on appeal, that Jeffers must have used deadly force, because Kemp died as a result of the force used. In deciding not to give an instruction on nondeadly force self-defense and, instead, only give an instruction on deadly force self-defense, the trial court ruled:
 {¶ 70} "THE COURT: * * *
 {¶ 71} "The fact of the matter is, I mean the guy died. I know [Mr. Morrison] may not [sic] argue that it wasn't a result of this. I am going to — how can you say this doesn't involve deadly force, if the guy died, Mr. Morrison?
 {¶ 72} "MR. MORRISON: Just, Your Honor, that what action he took, wasn't likely to cause death or great bodily harm by the Defendant.
 {¶ 73} "THE COURT: Well, then he is not guilty of the offense based on the element itself. Well, I am going to give an instruction under [4 Ohio Jury Instructions (2006), Section 411.31.]
 {¶ 74} "MR. MORRISON: For the record, if you would note our objection, Your Honor."
 {¶ 75} The trial court's conclusion regarding deadly force was erroneous for two reasons. One, the trial court's conclusion focused on the ultimate result, rather than the probability that Jeffers' action would result in Kemp's death. Second, based on the facts of this matter, the question of whether Jeffers used deadly force was a factual determination within the purview of the jury. See State v. Jackson (Dec. 14, 2000), 10th Dist. No. 00AP-444, 2000 Ohio App. LEXIS 5808, at *10 (citation omitted), and State v. Gee (Nov. 17, 1987), 2d Dist. No. 87-CA-22, 1987 Ohio App. LEXIS 9648, at *5.
 {¶ 76} "[I]f there is sufficient evidence on the issue of self-defense involving non-deadly force * * * the trial court must instruct the jury on that defense." State v. Griffin, 2d *Page 15 
Dist. No. 20681, 2005-Ohio-3698, at ¶ 16, citing State v. Ervin (1991),75 Ohio App.3d 275, 279.
 {¶ 77} Initially, we must look to the statutory definition of deadly force. "`Deadly force' means any force that carries a substantial risk that it will proximately result in the death of any person." R.C.2901.01(A)(2). "`Substantial risk' means a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C.2901.01(A)(8). Thus, the question for the jury was whether there was a "strong possibility, as contrasted with a remote or significant possibility," that the force used by Jeffers would cause the death of Kemp. Id. We note the statutory definition of deadly force was not given to the jury.
 {¶ 78} A single punch, standing alone, may not constitute deadly force. See State v. Perez (1991), 72 Ohio App.3d 468, 470-472. However, the act of delivering multiple punches, in succession, to another's head may rise to the level of deadly force. See State v. Watson, 8th Dist. No. 87281, 2006-Ohio-5738. The evidence presented in this matter presented a very close call as to whether Jeffers used deadly or nondeadly force. It was up to the jury to determine (1) whether there was a "strong possibility, as contrasted with a remote or significant possibility," that the force used by Jeffers would cause the death of Kemp and (2) whether the force used by Jeffers was likely to cause death or great bodily harm. See 4 Ohio Jury Instructions (2006), Section 411.31(6) and 4 Ohio Jury Instructions (2006), Section 411.33(3).
 {¶ 79} Next, we will address whether the trial court's failure to instruct the jury on the nondeadly version of self-defense was harmless error. The trial court properly instructed the jury regarding the statutory definition of serious physical harm, pursuant to R.C.2901.01(A)(5). The trial court instructed the jury as follows: *Page 16 
 {¶ 80} "Serious physical harm to persons means any of the following. One, any physical harm that carries a substantial risk of death. Two, any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity. Three, any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement. Or four, any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 81} In order for the jury to determine that Jeffers was guilty of felonious assault, it had to come to the conclusion that he knowingly caused serious physical harm to another. R.C. 2903.11(A)(1). In order for Jeffers to have succeeded on the nondeadly force version of self-defense, had the definition been given, the jury would have had to find that Jeffers "was justified in using force not likely to cause death or great bodily harm." 4 Ohio Jury Instructions (2006), Section 411.33. We note there is no statutory definition of "great bodily harm."State v. White (Aug. 4, 1986), 4th Dist. No. 85 CA 10, 1986 Ohio App. LEXIS 8142, at *3. The Sixth Appellate District held that the trial court did not err by instructing the jury that "serious physical harm" and "great bodily harm" meant the same thing and by later instructing the jury that they were to rely on their common understanding of the English language for the definition of "great bodily harm," since it was not defined for them. State v. Herrera, 6th Dist. No. OT-05-039,2006-Ohio-3053, at ¶ 53. If the terms "serious physical harm" and "great bodily harm" do not have identical definitions, their definitions are substantially similar. Thus, if the jury were to find that the force used by Jeffers was not likely to cause great bodily harm, that finding would have been inconsistent with its prior determination that Jeffers was aware his conduct would probably cause serious physical harm. *Page 17 
 {¶ 82} However, we have found merit in Jeffers' argument regarding the trial court's erroneous jury instruction on the element of "knowingly." Therefore, we are remanding this matter for a new trial. The trial court determined that an instruction on the lesser-included offense of assault was appropriate. Upon remand, a subsequent jury could find Jeffers committed the offense of assault by knowingly causing physical harm to another, in violation of R.C. 2903.13(A). That jury could find, under the nondeadly force version of self-defense, that Jeffers used force that was not likely to cause great bodily harm. In that event, the two findings would not be inconsistent, because the jury might determine that the force Jeffers used would be enough to cause physical harm, but not likely to cause great bodily harm. In State v. Perez, the defendant, a bouncer at a bar, punched a patron in the face, and the patron received substantial injuries. State v. Perez, 72 Ohio App.3d at 470. The bouncer was charged with felonious assault, but the initial jury convicted him of the lesser-included offense of assault. Id. at 469. The Tenth Appellate District reversed the judgment of the trial court, due to the trial court's failure to instruct on the nondeadly force version of self-defense. Id. at 471-472. The Tenth District's holding supports our conclusion that the nondeadly force version of self-defense instruction should have been given, but only to the extent that it applies as a defense to the lesser-included offense of assault. In other words, if the jury finds the defendant committed felonious assault, they should not be permitted to consider the use of nondeadly force as a defense to this charge. This would result in an inconsistent finding.
 {¶ 83} Accordingly, the trial court's failure to instruct on the nondeadly force version of self-defense would be harmless upon a proper conviction for felonious assault. However, if the jury is instructed on and finds the defendant committed a *Page 18 
misdemeanor assault, it should be permitted to consider the use of nondeadly force as a defense.
 {¶ 84} Next, Jeffers contends the trial court erred by failing to give an instruction on the lack of a duty to retreat from one's own home. The trial court stated that the evidence did not support this instruction. We agree.
 {¶ 85} Jeffers did not live at Schmid and Kemp's apartment. Schmid testified that only she and Kemp lived there. Moreover, in his statement to police, the following exchange occurred between Jeffers and the interviewing officer:
 {¶ 86} "The officer: And your current address?
 {¶ 87} "Jeffers: I came up from Toledo, but I'm moving back. So I guess — I guess maybe my mom's address * * *. I gave the other officer my old one in Toledo.
 {¶ 88} "The officer: Okay.
 {¶ 89} "Jeffers: Hopefully —
 {¶ 90} "The officer: You're moving back?
 {¶ 91} "Jeffers: Yeah. I was coming back here for a couple months and to live with my brother."
 {¶ 92} At trial, Jeffers testified that he was "staying" with his mother. He testified that this arrangement was in effect for about one week prior to the night of the incident in question. Thus, the evidence suggested that Jeffers was a temporary guest at Schmid and Kemp's apartment. When a guest is staying at another's home on a temporary basis, that residence does not qualify as the guest's home for purposes of an exception to the duty to retreat instruction. See State v.McDonald (July 6, 1993), 5th Dist. No. CA-9033, 1993 Ohio App. LEXIS 3507, at *7. *Page 19 
 {¶ 93} Since Jeffers did not live in the apartment, the trial court did not abuse its discretion by failing to give this instruction.
 {¶ 94} Jeffers contends the trial court's instruction to the jury that a defendant must "take the victim as you find them" was erroneous. The trial court gave this instruction as part of its instructions to the jury on felonious assault. The trial court acknowledged that this proposition of law derives from tort law. Jeffers argues that the instruction eliminated the "knowingly" requirement from the felonious assault statute. See R.C. 2903.11.
 {¶ 95} The trial court's instruction is not necessarily an incorrect statement of law, provided the defendant knows of the victim's infirm condition. In this matter, Jeffers stated in his police statement that he knew of Kemp's lung disease and, at trial, he testified that he was aware that Kemp had a few health problems. Since there was some evidence presented indicating Jeffers was aware of Kemp's problems, we cannot say the trial court abused its discretion by instructing the jury that you "take your victim as you find them."
 {¶ 96} Finally, Jeffers argues that the trial court failed to give an instruction on independent intervening causes of Kemp's death.
 {¶ 97} The trial court instructed the jury on intervening causes of death, pursuant to 4 Ohio Jury Instructions (2006), Section 409.56(2). See, e.g., State v. Filchock, 166 Ohio App.3d 611, 2006-Ohio-2242, at ¶ 38. Jeffers requested an instruction regarding independent intervening causes of death, pursuant to 4 Ohio Jury Instructions (2006), Section 409.56(3), which provides:
 {¶ 98} "3. INDEPENDENT INTERVENING CAUSE OF DEATH. If the defendant inflicted an injury not likely to produce death, and if the sole andonly cause of death *Page 20 
was (natural cause) * * * the defendant who inflicted the original injury is not responsible for the death." (Emphasis added.)
 {¶ 99} In this matter, there was evidence presented, which suggested that Kemp's health problems may have contributed to his death. However, the coroner's medical conclusion was that the cause of death was "blunt impacts to the head, trunk and extremities, with soft tissue and brain injuries." There was no evidence presented that Kemp died from natural causes alone.
 {¶ 100} The trial court did not abuse its discretion by failing to give an instruction on independent intervening causes of death.
 {¶ 101} Jeffers' first assignment of error has merit to the extent indicated.
 {¶ 102} The judgment of the trial court is reversed. This matter is remanded to the trial court in order for the trial court to conduct a new trial.
COLLEEN MARY OTOOLE, J., concurs with Concurring Opinion, CYNTHIA WESTCOTT RICE, J., dissents with Dissenting Opinion.
[1] While the instruction is unofficially known as "nondeadly force self-defense" its official title is "Self-defense against danger of bodily harm." For purposes of this opinion, we will refer to the instruction as the nondeadly force self-defense instruction.