OPINION
{¶ 1} Defendant-appellant, Stephen J. Cortner, appeals his judgment of conviction on one count of tampering with evidence, a felony of the third degree, in violation of R.C. 2921.12(A)(1) and (B). For the following reasons, we affirm the judgment of the trial court.
 {¶ 2} On the evening of November 22, 2003, appellant and a group of his friends attended a college graduation party for another friend. Following the party, a number of the partygoers decided to continue the celebration at 77 Soul, a nightclub located on Youngstown-Warren Road, in Warren, Ohio. Among the group of friends in attendance at the club that night were appellant, Antwan Anderson, Keywan Clark, Mizell Ewing and Andre Ford. In the early morning hours of November 23, 2003, a number of the group, including appellant and Anderson, became involved in an altercation with another group of young men in the parking lot outside the club. Police were called when the confrontation began to escalate. The operator of the Travel Lodge, a nearby motel, captured the events on videotape, which was later submitted to police.
 {¶ 3} Detective David Weber of the Warren Police Department was off-duty and working security for the Preston Auto Mall, which is located approximately two-tenths of a mile from 77 Soul, when he heard the 911 dispatch call to Warren Police over his police radio. Detective Weber, who was in his own vehicle, decided to proceed to 77 Soul to investigate and offer assistance to officers headed to the scene. As he drove past the parking lot of 77 Soul, Weber observed approximately 25 to 30 people involved in the fracas. Weber parked his vehicle across the street from 77 Soul and observed the confrontation from his vehicle so that he could keep other officers informed of the situation until they could arrive on the scene.
 {¶ 4} After he arrived on the scene, Weber observed a young man, who was later identified as the appellant, being attacked by a number of other individuals near the edge of the road, when some of appellant's friends ran up to assist them. Appellant managed to break free from his attackers, and retreated toward the group of friends. Within minutes, Weber observed another individual, later identified as Anderson, pursuing appellant's attackers while waving a gun before firing ten shots in the direction of the other group. After the shots were fired, appellant's traveling party rapidly retreated to their vehicles, five of them in total, and left the parking lot at 77 Soul just moments before patrol cars from the Warren Police Department arrived. Weber advised officers by radio that the shooter was in the second vehicle which left the parking lot, an Oldsmobile Cutlass, driven by Anderson. Police officers pulled over the first vehicle in the group, a Lincoln, and Anderson's Cutlass, and proceeded to remove the occupants from the vehicles. Officer Mackey of the Warren Police, assisted by Detective Weber, removed the occupants of the Cutlass. As Mackey removed appellant from the front passenger seat of the vehicle and placed him in handcuffs, he observed a 9 mm Ruger handgun lying on the passenger seat where appellant had been sitting.
 {¶ 5} Appellant was arrested and charged with one count of carrying a concealed weapon, a felony of the fourth degree, in violation of R.C. 2923.12(A) and (D), and one count of tampering with evidence, a felony of the third degree, in violation of R.C.2921.12 (A)(1) and (B). Appellant entered a plea of not guilty to the charges.
 {¶ 6} On November 22, 2004, the matter proceeded to jury trial. On November 24, 2004, the jury entered a verdict of not guilty on the concealed weapon charge and a verdict of guilty on the tampering with evidence charge, and the court sentenced appellant to a one year term of imprisonment.
 {¶ 7} Appellant timely appealed, asserting the following assignments of error:
 {¶ 8} "[1.] The trial court erred and abused its discretion, to the prejudice of the appellant, by permitting the state to introduce evidence that was not relevant to the alleged crime.
 {¶ 9} "[2.] The trial court erred by not granting appellant's motion for mistrial because the state put on evidence concerning the punishment phase of trial before the jury.
 {¶ 10} "[3.] The appellant's convictions are against the manifest weight of the evidence."
 {¶ 11} For the sake of clarity of presentation, appellant's assigned errors will be discussed out of order. In his third assignment of error, appellant argues that his conviction for tampering with evidence should be overturned as being against the manifest weight of the evidence since there was conflicting testimony related to "where the gun was found in the car and how long it took to find the gun in the car." We disagree.
 {¶ 12} Manifest weight of the evidence raises a factual issue. "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52, quoting State v. Martin (1983),20 Ohio App.3d 172, 175. "[T]he weight to be given to the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967),10 Ohio St.2d 230, at syllabus. However, when considering a weight of the evidence argument, a reviewing court "sits as a `thirteenth juror'" and may "disagree with the factfinder's resolution of the conflicting testimony." Thompkins, 78 Ohio St.3d at 387, citing Tibbs v. Florida (1982), 457 U.S. 31, 42. "The only special deference given in a manifest-weight review attaches to the conclusion reached by the trier of fact." Id. at 390 (Cook J., concurring).
 {¶ 13} In order to secure appellant's conviction for tampering with evidence, the State was required to prove, beyond a reasonable doubt, that appellant, "knowing that an * * * investigation [was] in progress, or [was] about to be or likely to be instituted * * * alter[ed], destroy[ed], conceal[ed], or remov[ed] any record, document, or thing, with purpose to impair its * * * availability as evidence in such * * * investigation." R.C. 2921.12(A)(1). "`Conceal' is defined as `preventing disclosure or recognition of' and `placing out of sight[.]'"State v. Dubois, 9th Dist. No. 21284, 2003-Ohio-2633, at ¶ 9, quoting Webster's Ninth New Collegiate Dictionary (9th Ed. 1984) 271.
 {¶ 14} Here, unquestionably, an investigation was in progress or likely to be instituted, since the police were in hot pursuit of the individuals responsible for the shooting incident. Moreover, the element of concealment may be satisfied by any attempt, however minimal, to conceal evidence which would be useful to the investigation. Id. at ¶ 11 (a reasonable inference of concealment was made where defendant "cupped" stolen jewelry in his hands in an attempt to hide it from police); State v.Morgan (Jun. 1, 1994), 5th Dist. No. 1054, 1994 Ohio App. LEXIS 2420, at *11-*12 (tampering found where, as police approached, defendant threw a plastic container with crack cocaine away from the scene). Moreover, the element of tampering may be proven, even when a defendant's act of concealment is ultimately unsuccessful, as was the case here. Dubois, 2003-Ohio-2633, at ¶ 11, citing State v. Colquitt (Sep. 24, 1999), 2nd Dist. No. 98-CA-71, 1999 Ohio App. LEXIS 4436, at *13; State v. Blanchard
(Mar. 29, 1996), No. 95-CA-0032, 1996 Ohio App. LEXIS 2239, at *8. Since the state presented sufficient evidence for the case to go to the jury, the sole remaining issue was whether the jury erred in concluding the prosecution's witnesses were more credible than those of the defense.
 {¶ 15} At trial, the prosecution elicited testimony from Detective Weber, Officer Mackey, and Jonathan Gardner of the Ohio Bureau of Criminal Identification and Investigation (BCI). For the defense, appellant testified on his own behalf. In addition, the defense brought Ewing and Ford as witnesses.
 {¶ 16} Gardner provided expert testimony with respect to the identification of the gun and matched it to the ballistic markings left on ten shell casings recovered by Weber and Mackey. Relevant to the tampering with evidence charge, Weber testified that he identified the Anderson's Oldsmobile as the one the shooter occupied, and that the gun used in the incident might be in the vehicle. He also testified that he assisted one of the officers in detaining and handcuffing Anderson, that he identified appellant as being in the Oldsmobile with Anderson. Officer Mackey testified that appellant was seated in the front passenger seat of the Oldsmobile and that he was not wearing a coat or any bulky clothing. Mackey further testified that when he asked appellant to exit the vehicle, appellant hesitated at first before finally stepping out. As appellant stepped out of the vehicle, Mackey testified that he immediately noticed the gun sitting on the surface of the front seat where appellant had been sitting, and that he immediately recovered the gun.
 {¶ 17} Appellant testified in his own defense, and corroborated Weber's testimony that Anderson was the person who fired the shots, and that the gun found on his seat was the one fired by Anderson during the incident. Appellant stated that, as they left the scene of the incident Anderson, knowing that officers were about to pull the car over, attempted to give him the gun to throw out the window, but appellant had refused to take it. Appellant testified that after he refused to take the gun, Anderson handed it to Clark, who was sitting in the back seat directly behind appellant. Appellant claimed that he did not know how the gun came to be on the front seat and denied that he was sitting on the gun at any time.
 {¶ 18} Ford, who was a passenger in the Lincoln, testified that police officers searched the Lincoln first and about ten minutes passed before officers searched Anderson's Oldsmobile and recovered the gun. Ewing, who was also among the group of friends at 77 Soul, but not a passenger in either of the vehicles the police pulled over, also testified on appellant's behalf. Ewing stated that after the police pulled over the Lincoln and the Oldsmobile, his group pulled over at a nearby parking lot and walked over so that they could see what was happening. Ewing testified that police did not recover the gun for "about five or ten minutes" after the stop and only after all of the occupants of the vehicles were taken from the two cars and handcuffed.
 {¶ 19} After the defense rested, Weber was called as a rebuttal witness and testified that Mackey recovered the gun "within a matter of seconds" after removing appellant from the vehicle.
 {¶ 20} Appellant makes much of the fact that Ford and Ewing's testimony was different from that of Weber's and Mackey's with respect to where the gun was found in Anderson's car and how long it took police to recover the gun. However, appellant did not deny that the gun was found in the front seat, he merely denied that he had placed it there. Ford and Ewing did not testify as to where police located the gun in Anderson's vehicle, since neither was in a position to observe the search, but both testified that approximately ten minutes passed before the gun was recovered. While, at least superficially, it appears this testimony is inconsistent with that of the police, it is precisely the role of the jury, as fact-finder, to "resolve any conflicts in the testimony of various witnesses." State v. Miller, 8th Dist. No. 63431, 1993 Ohio App. LEXIS 4240, at *6; see also, State v.Rudge (Dec. 20, 1996), 11th Dist. No. 95-P-0055, 1996 Ohio App. LEXIS 5807, at *44 ("The exercise of weighing and judging credibility of witnesses falls squarely within the province of the jury, as that body is best able to observe the witnesses' demeanor, gestures, and voice inflections"). As such, "[a] reviewing court may substitute its judgment for that of the jury only when the jury has opted to believe the unbelievable."Miller, 1993 Ohio App. LEXIS 4240, at *6. In our review of the testimony, we find nothing in the testimony that would lead us to believe the jury lost its way or created a manifest miscarriage of justice in favoring the State's version of events over appellant's.
 {¶ 21} The fact that the jury convicted appellant on the tampering with evidence charge but not the carrying a concealed weapon charge has no bearing on whether its verdict on the tampering charge was against the manifest weight of the evidence. The well-settled rule in Ohio states "[t]he several counts of an indictment containing more than one count are not interdependent," and "[a] verdict responding to a designated count will be construed in light of the count designated, and no other." State v. Adams (1978), 53 Ohio St.2d 223, 228
(citations omitted). Appellant's third assignment of error is without merit.
 {¶ 22} In his first assignment of error, appellant maintains that the court committed error by allowing the State to introduce into evidence a videotape that was "irrelevant to charges against the defendant and highly prejudicial." We disagree.
 {¶ 23} The admission or exclusion of videotaped evidence is a matter within the sound discretion of the trial court and unless the court clearly abused its discretion, an appellate court will not overturn the lower court's evidentiary ruling. State v.Mann (1985), 19 Ohio St.3d 34, 38. An abuse of discretion consists of more than an error of law or judgment. Rather, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Berk v. Matthews (1990), 53 Ohio St.3d 161, 169
(citation omitted). Furthermore, in order to warrant a reversal under an abuse of discretion standard, appellant must demonstrate not only that the trial court abused its discretion by admitting or excluding the disputed evidence, but that he has "been materially prejudiced thereby." State v. Martin (1985),19 Ohio St.3d 122, 129 (citation omitted).
 {¶ 24} Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence which is relevant is generally admissible, subject to certain exclusions, and irrelevant evidence is generally inadmissible. Evid.R. 402.
 {¶ 25} Evid.R. 403(A) governs one of the circumstances under which the exclusion of relevant evidence is made mandatory.State v. Hamilton, 11th Dist. No. 2000-L-003, 2002-Ohio-1681, at ¶ 81. The rule states that the trial court is required to exclude otherwise relevant evidence in cases where the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." State v. Totarella, 11th Dist. No. 2002-L-147,2004-Ohio-1175, at ¶ 34; State v. Entze, 11th Dist. No. 2003-P-0018, 2004-Ohio-5321, at ¶ 28.
 {¶ 26} Appellant argues that the admission into evidence of the videotape showing the altercation in the parking lot of 77 Soul unfairly prejudiced him because "the contents of the videotape were unrelated to appellant's crime," and "misled the jury to believe that appellant was associated with another crime in which he was not." This argument strains credulity.
 {¶ 27} We note that appellant was charged with two crimes, carrying a concealed weapon and tampering with evidence, but only convicted of the tampering with evidence charge. Putting aside the fact that appellant does not dispute that he was present and involved in the altercation leading to the gun being fired, and that appellant admitted the gun which was found in Anderson's Oldsmobile was the one used during the incident, the videotape was highly relevant to the tampering with evidence charge, since the gun was the very evidence of Anderson's crime which appellant was being charged with concealing from police while an "official * * * investigation [was] in progress or * * * likely to be instituted." Appellant's first assignment of error is without merit.
 {¶ 28} In his second assignment of error, appellant argues that the trial court erred to his prejudice in denying his motion for mistrial. We disagree.
 {¶ 29} "The grant or denial of an order of mistrial lies within the sound discretion of the trial court." State v.Garner, 74 Ohio St.3d 49, 59, 1995-Ohio-168, citing State v.Glover (1988), 35 Ohio St.3d 18, 19. "[M]istrials need be declared only when the ends of justice so require and a fair trial is no longer possible." Id. citing State v. Franklin
(1991), 62 Ohio St.3d 118, 127.
 {¶ 30} In essence, appellant is arguing that the court erred by failing to declare a mistrial on the basis of the prosecution's improper cross-examination with respect to his prior conviction. Appellant maintains that it was improper for the prosecution to question him about his prior conviction and the possibility that appellant could receive a prison term if convicted of the current charges against him, since such questioning was "putting the punishment of the crime before the jury." We disagree.
 {¶ 31} Under Evid.R. 404(B), "[e]vidence of other crimes, wrongs or bad acts independent of, and unrelated to, the offenses for which a defendant is on trial is generally inadmissible to show criminal propensity." State v. Wogenstahl,75 Ohio St.3d 344, 366, 1996-Ohio-219. While "other acts" evidence may not be used to prove criminal propensity, such evidence may be admissible "if (1) there is substantial proof that the alleged other acts were committed by the defendant, and (2) the evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Statev. Lowe, 69 Ohio St.3d 527, 530, 1994-Ohio-345; Evid.R. 404(B).
 {¶ 32} Appellant took the stand in his own defense and admitted during direct examination, that he was previously convicted in Cuyahoga County for carrying a concealed weapon. Appellant also admitted, upon cross-examination, that he was currently subject to community control sanctions for that conviction, and that he could be subject to a prison term for violating the terms of his community control. "Any time an accused testifies, the accused's prior conviction is admissible, unless the probative value of the evidence is outweighed by its prejudicial effect." State v. Lane (1997), 118 Ohio App.3d 230,234. Moreover, Evid.R. 609(A)(2) specifically permits the State the ability to conduct a limited cross-examination for the purposes of impeachment. State v. Bryan, 101 Ohio St.3d 272,2004-Ohio-971, at ¶ 132; State v. Green (1993),66 Ohio St.3d 141, 147; see also State v. Slagle (1992), 65 Ohio St.3d 597,605, citing Evid.R. 611(B) ("As a general rule cross-examination is `permitted on all relevant matters and matters affecting credibility.'"). The extent of cross-examination allowed is within the discretion of the trial court, and will not be overturned absent an abuse of that discretion. State v. Acre
(1983), 6 Ohio St.3d 140, 145.
 {¶ 33} In the instant matter, the prosecution cross-examined appellant as follows with regard to his prior conviction:
 {¶ 34} "Q: Okay. Now Mr. Goodman asked you, I think, about being on probation or what you call community control sanctions for carrying a concealed weapon; correct?
 {¶ 35} "A: Yes, sir.
 {¶ 36} "Q: All right. And you're still on probation for that; correct?
 {¶ 37} "A: Yes, sir.
 {¶ 38} "Q: And if you violate that probation, what could happen to you?
 {¶ 39} "A: I could go to prison, sir.
 {¶ 40} "Q: All right. So you've got a little bit of incentive here to not be caught doing anything bad while you're on probation; right?
 {¶ 41} "A: Excuse me?
 {¶ 42} "Q: Well, if you do something bad, such as have another gun, you may go to prison, right?
 {¶ 43} "A: Yes sir. That's a possibility."
 {¶ 44} At the time of this exchange, no objection was made by defense counsel. Accordingly, Cortner has waived all but plain error. See State v. Childs (1968), 14 Ohio St.2d 56, paragraph three of the syllabus.
 {¶ 45} Later in the cross-examination, the following exchange occurred:
 {¶ 46} "Q: Now the only thing you dispute again is Officer Mackey says when he gets you up you're sitting on that gun. You deny that?
 {¶ 47} "A: Yes, sir, I do.
 {¶ 48} "Q: Okay. And is the reason you deny that because you weren't sitting on it or because you're looking at going to prison if you're found guilty?
 {¶ 49} "Mr. Goodman: I object.
 {¶ 50} "The Court: Sustained."
 {¶ 51} A sidebar followed, after which the following exchange occurred:
 {¶ 52} "Q: Mr. Cortner, whether you're found guilty * * * if you are found guilty, that will have an effect on your community control sanctions in Cleveland, correct?
 {¶ 53} "A: Yes, sir.
 {¶ 54} "Q: Okay. And it would not be a positive effect for you; correct?
 {¶ 55} "A: No, sir."
 {¶ 56} Based on the foregoing colloquy, we conclude that the cross-examination was permissible under Evid.R. 609 for the purpose of impeaching appellant's credibility. "Generally a prosecutor can cross-examine as to `the name of the crime, the time and place of conviction, and sometimes the punishment.'"Bryan, 2004-Ohio-971, at ¶ 132, quoting 1 Giannelli Snyder, Evidence (2d Ed. 2001), Section 609.15, at 473. The prosecution did not elicit any details about appellant's prior conviction other than the fact that appellant might be subject to prison for a violation of his community control sanctions if he was caught doing "something bad." This evidence was highly probative as to the issue of his credibility, i.e., whether Cortner would be motivated to misrepresent the facts of his arrest to avoid getting into further trouble. See State v. Williams (1988),61 Ohio App.3d 594, 597 ("Because the possible bias of a witness is always significant in assessing credibility, the trier of fact must be sufficiently informed of the * * * circumstances, and influences operating on the witness `so that, in light of his experience, he can determine whether a mutation in testimony could reasonably be expected as a probable human reaction'") (citation omitted).
 {¶ 57} Moreover, limited questioning on cross-examination was also probative of appellant's motive in attempting to hide the weapon from police. See State v. Webber (Aug. 23, 2000), 9th Dist. No. 3001-M, 2000 Ohio App. LEXIS 3802, at *7 (admission of evidence tending to prove or disprove whether accused acted to avoid a possible prison term was probative of accused's motive).
 {¶ 58} Since the trial court provided proper limiting instructions to the jury, we conclude that the trial court did not abuse its discretion or commit plain error by refusing to declare a mistrial on the basis of the prosecution's conduct during cross-examination. Appellant's second assignment of error is without merit.
 {¶ 59} Accordingly, we affirm the judgment of the Trumbull County Court of Common Pleas.
Ford, P.J., concurs, O'Neill, J., dissents with a Dissenting Opinion.