[Cite as *State v. Boles*, 2014-Ohio-744.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2013-A-0026** |
| ERNEST MAURICE BOLES, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2011 CR 392.

Judgment: Affirmed.

*Nicholas A. Iarocci,* Ashtabula County Prosecutor, and *Shelley M. Pratt,* Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Ariana E. Tarighati,* Law Offices of Ariana A. Tarighati, L.P.A., 34 South Chestnut Street, #100, Jefferson, OH 44047 (For Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, Ernest Maurice Boles, appeals his convictions, following a jury trial in the Ashtabula County Court of Common Pleas, for Attempted Aggravated Murder, Attempted Murder, Felonious Assault, Kidnapping, Disrupting Public Services, Endangering Children, and Domestic Violence. The issues to be determined by this court are whether the State proved that a defendant had intent to commit Murder when he stabbed the victim over 40 times, whether evidence of "other

acts" is admissible when it is used to rehabilitate a witness, and whether evidence of a victim's contact with a defendant after the crimes were committed is relevant under Evid.R. 401. For the following reasons, we affirm the judgment of the court below.

{¶2} On September 28, 2011, the Ashtabula County Grand Jury issued an Indictment, charging Boles with the following: one count of Attempted Aggravated Murder (Count One), a felony of the first degree, in violation of R.C. 2903.01(B) and 2923.02; two counts of Attempted Murder (Counts Two and Three), felonies of the first degree, in violation of R.C. 2903.02(A) and (B) and 2923.02; two counts of Felonious Assault (Counts Four and Five), felonies of the second degree, in violation of R.C. 2903.11(A)(1) and (2); four counts of Kidnapping (Counts Six through Nine), felonies of the first and second degree, in violation of R.C. 2905.01(A)(2) and (3) and (B)(1) and (2); Disrupting Public Services (Count Ten), a felony of the fourth degree, in violation of R.C. 2909.04(A)(3); three counts of Endangering Children (Counts Eleven through Thirteen), misdemeanors of the first degree, in violation of R.C. 2919.22(A); and one count of Domestic Violence (Count Fourteen), a misdemeanor of the first degree, in violation of R.C. 2919.25(A).

{¶3} On October 12, 2011, Boles filed a Plea of Not Guilty by Reason of Insanity and a Motion to Determine Competence to Stand Trial.

{¶4} Following a hearing, the trial court issued an April 16, 2012 Judgment Entry, finding Boles competent to stand trial. On September 27, 2012, following a hearing on Boles' plea of Not Guilty by Reason of Insanity, the court found that he was sane at the time of the commission of the offenses.

2

{¶5} On January 10, 2013, Boles filed a Motion in Limine, requesting that certain evidence be excluded, including testimony or evidence related to his bad reputation and any other bad acts.

{¶6} A jury trial was held in this matter between March 6-8, 2013. The following pertinent testimony and evidence were presented.

{¶7} On September 19, 2011, Brittany Hall was driving with her boyfriend, Boles, with whom she had two young sons. The two were arguing over various issues, including Boles' drug use. Brittany told him that she did not want to date him anymore. Following this argument, they returned home. Although Brittany planned on leaving, Boles asked her to carry one of the children inside.

{¶8} After entering the home, Brittany made a phone call, and Boles approached her from behind. Boles began stabbing her, she tried to escape, and fell down. Boles got on top of her and continued stabbing her, while Brittany's five-year-old daughter watched. Brittany screamed, "Mo [Boles' nickname], stop you're killing me." According to Brittany, Boles stabbed her 63 times. Following the attack, Brittany attempted to call 911, but Boles took the phone away from her. He then took the batteries out of the phone, locked the doors, and left the home, taking one of their sons.

{¶9} Robert Butcher was on the phone with Brittany at the time the stabbing began. During the conversation, Brittany stated "Mo, you're killing me," Butcher heard children screaming and crying in the background, and the phone went dead. Butcher and his fiancée, Lisa Hall, drove to Brittany's house. After struggling to unlock the door, Brittany's five-year-old daughter let Lisa inside. Brittany's daughter was "in hysterics" and said "Mo killed my mom. He stabbed her to death."

{¶10} Lisa entered the home, where Brittany was lying on the floor in a pool of blood. After unsuccessfully trying to locate the home phone, Lisa used her cell phone to call 911. Lisa later found one of the two phones under a bed. Detective Brian Cumberledge of the Ashtabula County Sheriff's Department searched the home but was unable to locate the second telephone.

{¶11} Brittany was taken to the Ashtabula County Medical Center. According to emergency room physician Dr. Imraan Haniff, the stab wounds punctured Brittany's lung and were life-threatening. Medical records indicate that she was stabbed a total of 42 times.

{¶12} Deputy Steve Murphy of the Ashtabula County Sheriff's Department conducted an arrest of Boles on the date of the incident, following a vehicle stop. Murphy noticed dried blood on Boles' hands and blood stains on his shirt. Additional clothing recovered from the car was also blood-stained. Detective Cumberledge testified that swabs were taken from Boles' hands, which were evaluated by the Ohio Bureau of Criminal Identification and Investigation. Forensic scientist Melissa Zielaskiewicz testified that the swabs were found to contain Brittany's DNA.

{¶13} Detective George Taylor Cleveland testified that, upon interviewing Boles, he gave a statement that Brittany came at him with a knife. Detective Cleveland also noticed that Boles had blood stains on his hands and lacerations on a few of his fingers.

{¶14} Ernest Boles, Sr., Boles' father, testified that Boles told him that Brittany had come at him with a knife and said, "I think I killed her." Rachel Hall, the mother of two of Boles' other children, who gave Boles a ride on the date of the incident, also testified that he told her Brittany had been "chasing him with a knife."

4

{¶15} Brittany testified that subsequent to the stabbing and Boles' arrest, she continued to communicate with him while he was in jail. She purchased phone cards for him to call her. She also sent him letters, stating that she loved him, as well as photographs of herself and the children.

{¶16} At the conclusion of the State's case, Boles' counsel requested dismissal of various charges, pursuant to Crim.R. 29. The court granted this motion as to three counts of Kidnapping.

{¶17} The defendant, Ernest Boles, Jr., testified that on September 19, he and Brittany were arguing about whether he would go to a dinner with Brittany that night. Brittany screamed at him, telling him that she hated him and hoped that he died. After the two went to their home, Boles saw Brittany holding a knife, still saying that she hoped he died. He believed she was "going to do something" with the knife, and felt threatened. Boles then wrestled with her to take the knife away. He testified that Brittany had stabbed him in the past, and this is why he took the knife from her.

{¶18} Boles testified that after wrestling with Brittany over the knife, he "kind of black[ed] out," then saw blood on her, and called 911 three times, but hung up each time. He explained that he never intended to kill Brittany.

{¶19} At the conclusion of Boles' case, defense counsel moved to admit the letters sent from Brittany to Boles while he was in jail, but the trial court denied this request.

{¶20} On March 8, 2013, the jury found Boles guilty of all of the remaining 11 counts. This verdict was memorialized in the trial court's March 12, 2013 Judgment Entry.

{¶21} A sentencing hearing was held on April 16, 2013, and an Amended Sentencing Judgment Entry was filed on May 15, 2013. The court merged the Attempted Aggravated Murder, Attempted Murder, Felonious Assault, and Kidnapping convictions and sentenced Boles to serve nine years in prison. He was ordered to serve a term of one year of incarceration, to run consecutively with the nine year sentence, for Disrupting Public Services. He was also sentenced to six months on each conviction for Child Endangering and for Domestic Violence, to be served concurrently with the foregoing sentence, for a total term of imprisonment of ten years in prison.

{¶22} Boles timely appeals and raises the following assignments of error:

{¶23} "[1.] A trial court abuses its discretion and commits error by allowing prejudicial other acts evidence to be introduced at trial in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

{¶24} "[2.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence in violation of Article IV of the Ohio Constitution.

{¶25} "[3.] A trial court abuses its discretion and commits error by excluding the admission of properly authenticated documents in violation of the Sixth and Fourteenth Amendments to the United States Constitution."

{¶26} In his first assignment of error, Boles asserts that Brittany was improperly permitted to testify regarding "other acts," including that he made her recant past domestic violence allegations and that he was controlling.

{¶27} The State argues that the testimony was presented for purposes other than showing Boles' criminal propensity and, therefore, was admissible.

6

{¶28} "[T]he determination to admit or exclude evidence is within the sound discretion of the trial court and will not be reversed by an appellate court absent a showing of an abuse of discretion." *State v. McCaleb*, 11th Dist. Lake No. 2002-L-157, 2004-Ohio-5940, ¶ 27; *State v. Sweeney*, 11th Dist. Lake No. 2006-L-252, 2007-Ohio-5223, ¶ 22 ("[e]videntiary rulings are matters within the sound discretion of the trial court").

{¶29} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Evid.R. 404(B); *State v. Wogenstahl*, 75 Ohio St.3d 344, 366, 662 N.E.2d 311 (1996) ("evidence of * * * bad acts independent of, and unrelated to, the offenses for which a defendant is on trial is generally inadmissible to show criminal propensity"). However, when evidence of bad acts is admitted for a purpose independent of showing criminal disposition, it is admissible. *State v. Lindsay*, 5th Dist. Richland No. 2010-CA-0134, 2011-Ohio-4747, ¶ 71.

{¶30} Brittany testified that she had committed "misdemeanor falsification" in the past. During cross-examination, defense counsel inquired further into this conviction. After questioning whether the prosecutor reminded her prior to testifying of the importance of being honest, defense counsel then immediately brought up the falsification conviction and asked whether it resulted from her giving a false police report. The State then inquired further regarding the conviction on redirect, asking about the circumstances surrounding the false police report and questioning whether it was the result of filing a domestic violence complaint against Boles, which he asked her to drop. She responded affirmatively. Although defense counsel generally objected to

7

the admission of any "other acts" evidence in the Motion in Limine, counsel did not object during this portion of the questioning, nor was this specific issue discussed when the court issued its ruling on the Motion in Limine at the beginning of the trial. Since counsel did not object, this issue must be evaluated under a plain error analysis. *State v. Cortner*, 11th Dist. Trumbull No. 2005-T-0020, 2006-Ohio-871, ¶ 44. An alleged error constitutes plain error only if the error is obvious and, but for the error, the outcome of the trial clearly would have been different. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 108.

{¶31} In the present case, defense counsel inquired into Brittany's conviction as part of a line of questioning used to attack her credibility. The State merely asked for further explanation in order to rehabilitate Brittany, and show the reasons for the falsification conviction. Evidence of a prior bad act is admissible when used to rehabilitate a witness. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 78. The State did not attempt to introduce this evidence to show Boles' propensity for criminal behavior but to prove that the falsification conviction should not adversely affect Brittany's credibility.

{¶32} In addition, although Boles refers also to "numerous occasions" where "other acts" evidence was improperly admitted, he does not provide specific examples in support of this argument. To the extent that he appears to argue that testimony regarding his controlling behavior was improper, we find that the trial court did not abuse its discretion by allowing such testimony.

{¶33} During cross-examination, defense counsel inquired of Brittany regarding letters she sent to Boles while he was awaiting trial in the present case. These letters

8

stated that she loved him and generally related to their continued relationship following the stabbing. On redirect, the State, over defense counsel's objection, asked questions regarding the couple's relationship, elicited testimony that Boles was controlling, and then inquired regarding Brittany's inability to "run her life" and her need to continue communicating with Boles following his incarceration. This line of questioning was a response to the issues raised during cross-examination. Defense counsel opened the door to such testimony regarding this issue, and thus, error cannot be claimed. *State v. Sands*, 11th Dist. Lake No. 2007-L-003, 2008-Ohio-6981, ¶ 166 (defendant "opened the door" to other acts testimony by raising certain issues as part of his defense); *State v. Barnett*, 3rd Dist. Logan No. 8-12-09, 2013-Ohio-2496, ¶ 40 (by being "the first to broach the topic" leading to certain testimony, the defendant "opened the door and invited any error relating to the admission of this evidence").

{¶34} In addition, defense counsel was on notice that its presentation of the letters and related questioning could have opened the door to additional evidence of phone calls between Boles and Brittany and to questioning regarding the issue of whether Boles was controlling, as this issue was discussed with the court prior to the commencement of Brittany's testimony. "[A] criminal defendant may not make an affirmative, apparently strategic decision at trial and then complain on appeal that the result of that decision constitutes reversible error." *State v. Dorr*, 8th Dist. Cuyahoga No. 84433, 2005-Ohio-775, ¶ 7.

{¶35} Further, even if the admission of the foregoing testimony was in error, given that there was overwhelming evidence to support the fact that Boles committed the crime, including that Boles did not contest that he stabbed Brittany, the physical

9

evidence placing him at the scene of the crime, and the lack of evidence that the stabbing was anything other than intentional, any potential error would be harmless. *State v. Sage*, 31 Ohio St.3d 173, 181, 510 N.E.2d 343 (1987); *State v. Elersic*, 11th Dist. Geauga Nos. 2001-G-2335 and 2003-G-2512, 2003-Ohio-7218, ¶ 35 (admission of improper "other acts" evidence was harmless when there was overwhelming evidence against the defendant).

{¶36} The first assignment of error is without merit.

{¶37} In his second assignment of error, Boles argues that his convictions for Attempted Aggravated Murder and Attempted Murder were against the manifest weight of the evidence, since the evidence showed that he had no intention to cause Brittany's death and "the jury should have found that he acted with sufficient provocation."

{¶38} A challenge to the manifest weight of the evidence involves factual issues. The "weight of the evidence addresses the evidence's effect of inducing belief." (Citation omitted.) *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25; *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997) ("[w]eight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial'") (emphasis sic) (citation omitted). "In other words, a reviewing court asks whose evidence is more persuasive -- the state's or the defendant's?" *Wilson* at ¶ 25.

{¶39} Generally, the weight to be given to the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. *State v. Thomas*, 70 Ohio St.2d 79, 434 N.E.2d 1356 (1982), syllabus. When reviewing a manifest weight challenge, however, the appellate court sits as the "thirteenth juror." (Citation omitted.) *Thompkins*

at 387. The reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses, to determine whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." (Citation omitted.) *Id.*

**{¶40}** First, Boles argues that the convictions for Attempted Aggravated Murder and the first count of Attempted Murder required the State to prove that he had a specific intention to cause Brittany's death, which it failed to do.

**{¶41}** For Boles to be convicted of Attempted Aggravated Murder, the State was required to prove, beyond a reasonable doubt, that he attempted to "purposely cause the death of another * * * while committing or attempting to commit * * * kidnapping." R.C. 2903.01(B). Further, in order to be convicted of Attempted Murder under R.C. 2903.02(A), the State was required to prove that Boles attempted to "purposely cause the death of another." This court has noted that "[t]he elements of attempted murder are: (1) purposely or knowingly, (2) engaging in conduct that, if successful, would result in, (3) the death of another." *State v. Kouns*, 11th Dist. Portage No. 2011-P-0105, 2012-Ohio-5331, ¶ 23. Attempt is defined as a person "purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, * * * engag[ing] in conduct that, if successful, would constitute or result in the offense." R.C. 2923.02(A).

11

**{¶42}** The weight of the evidence supports the determination that Boles purposely engaged in conduct that would result in the death of Brittany. The testimony of Brittany established that, following an argument, Boles began to stab her repeatedly. Although Brittany yelled that he was "killing her," he continued to stab her. By her account, she was stabbed over 60 times, while hospital records establish that she was stabbed over 40 times. These stab wounds caused her to have a punctured lung and were life-threatening. The sheer number of times he stabbed her support a conclusion that he purposely acted to cause her death. *See State v. Fisher*, 8th Dist. Cuyahoga No. 65562, 1994 Ohio App. LEXIS 2601, 10 (June 16, 1994) (when the victim was stabbed 70 times, "the trier of fact could have properly found an intent to kill").

**{¶43}** Moreover, testimony from both Brittany and Lisa established that Boles removed or tampered with at least one phone and locked the doors, making it difficult for Brittany to seek help for her injuries, which further supports a conclusion that he intended to cause her death. Based on the foregoing facts, the jury was able to properly infer that Boles had the requisite intent to commit the Attempted Murder and Attempted Aggravated Murder offenses. *State v. Franklin*, 11th Dist. Geauga No. 2010-G-2979, 2012-Ohio-1267, ¶ 100 ("purpose can be inferred from the facts in evidence").

**{¶44}** Although Boles tries to show that he lacked intent to kill Brittany by arguing that she was the initial aggressor, this is based solely on his own testimony and statements he made to other witnesses that Brittany approached him with a knife. Boles suffered only scratches on a few fingers, providing little support for any contention that Brittany tried to attack him. Further, the assertion that he was "wrestling" with her for the knife is dubious, given that Brittany was stabbed such a great number of times.

12

While Brittany and Boles gave different versions of the events, we find no reason to second guess the jury's decision to believe Brittany's version of the events. The determination of a witness' credibility lies with the finder of fact and an appellate court may not substitute its own judgment. *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986); *State v. Higginbottom*, 11th Dist. Portage No. 2012-P-0028, 2012-Ohio-5834, ¶ 55 ("the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it") (citation omitted).

{¶45} Second, Boles argues that the Felonious Assault convictions, which provided a basis for the second Attempted Murder conviction under R.C. 2903.02(B), were not supported by the evidence, and the jury should have found that he committed the lesser included offense of Aggravated Assault, based on the existence of serious provocation.

{¶46} Felonious Assault occurs when a person knowingly causes "serious physical harm to another" or when he causes or attempts to cause "physical harm to another * * * by means of a deadly weapon or dangerous ordnance." R.C. 2903.11(A)(1) and (2). Aggravated Assault includes the same elements, but adds the mitigating factor that the person is "under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force." R.C. 2903.12(A).

{¶47} "Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. In determining whether the provocation was

13

reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time." *State v. Johnson*, 11th Dist. Lake No. 2006-L-259, 2007-Ohio-5783, ¶ 74, citing *State v. Deem,* 40 Ohio St.3d 205, 533 N.E.2d 294 (1988), paragraph five of the syllabus. If this standard is met, "the inquiry shifts to a subjective standard, to determine whether the defendant in the particular case 'actually was under the influence of sudden passion or in a sudden fit of rage.'" (Citation omitted.) *State v. Mack*, 82 Ohio St.3d 198, 201, 694 N.E.2d 1328 (1998).

**{¶48}** In the present case, Boles argues that serious provocation occurred, which caused him to stab Brittany. While he argues he was provoked by Brittany having the knife and threatening him, she testified that this did not happen. There was no other evidence to corroborate Boles' testimony that Brittany threatened him with the knife. This issue is again a question for the finder of fact, since it deals with witness credibility. Provided that the jury accepted Brittany's version of events, it cannot be argued that Boles was provoked into the attack. She testified that she merely was arguing with him over his drug use and told him she no longer wanted to be with him. This cannot be considered to have incited Boles into using such force against Brittany.

**{¶49}** The second assignment of error is without merit.

**{¶50}** In his third assignment of error, Boles argues that the trial court erred by not admitting as evidence the letters Brittany sent to him while he was in jail. He argues that since the letters were properly authenticated and related to "Mr. Boles' intent and Ms. Hall's perception of that intent," they were admissible.

14

{¶51} As described above, the decision to admit or exclude evidence is evaluated under an abuse of discretion standard. *Renfro v. Black*, 52 Ohio St.3d 27, 32, 556 N.E.2d 150 (1990).

{¶52} Evid.R. 402 provides: "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute * * *, by these rules, or by other rules prescribed by the Supreme Court of Ohio. Evidence which is not relevant is not admissible."

{¶53} Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401.

{¶54} In the present matter, the letters were properly excluded due to their lack of relevance.[1] These letters were sent by Brittany to Boles, while he was in jail following the stabbing. They discuss her feelings toward him, state that she still loves him, and address various other issues related to their relationship and children. They do not discuss the crimes that were the subject of this case. While Boles argues that they go to his intent while committing the crime, he points to no statements in the letters which relate to this. The mere fact that Brittany has continued to communicate with Boles does not provide any indication of his intent at the time of the crime, nor does it show whether he intended to kill her. Her feelings and decision to remain in contact have no bearing on the elements of the crimes for which he was convicted.

{¶55} Further, Brittany admitted during cross-examination that she had sent him letters while he was in jail, telling him that she loved him, and admitted that they were

---

1. Although the letters were not provided as part of the record as exhibits not admitted, they were made part of the record as attachments to a Response to Discovery filed by defense counsel.

15

"letters of affection." This, in essence, summarized the content of the letters. To the extent that this fact was of any relevance, it was already before the jury.

{¶56} Regardless of whether these letters were properly authenticated, as was addressed at length by Boles, the lack of relevance renders them inadmissible and we cannot find that the trial court abused its discretion by excluding them.

{¶57} The third assignment of error is without merit.

{¶58} For the foregoing reasons, the judgment of the Ashtabula County Court of Common Pleas, finding Boles guilty of Attempted Aggravated Murder, Attempted Murder, Felonious Assault, Kidnapping, Disrupting Public Services, Endangering Children, and Domestic Violence, is affirmed. Costs to be taxed against appellant.


CYNTHIA WESTCOTT RICE, J.,

COLLEEN MARY O'TOOLE, J.,

concur.

16